## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CHANTAL BASTIAN, SANDRA
ADDA, ROBERT BELTRAMI,
WILLIAM LAKER, OLIVER
SUTTON, on behalf of themselves and
all others similarly situated,

     Plaintiffs,

v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION, *et al.,*

     Defendants.

Case No.: 3:13-cv-001454-TJC-MCR

**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES,
CLASS REPRESENTATION**

Original Named Plaintiff Chantal Bastian, and Amended Named Plaintiffs Sandra

Adda, Robert Beltrami, William Laker, and Oliver Sutton (collectively "Plaintiffs"), on

behalf of themselves and all others similarly situated, file this amended class action

complaint against United Services Automobile Association ("USAA"), USAA Casualty

Insurance Company ("USAA-CIC"), Garrison Property and Casualty Insurance Company

("Garrison"), and USAA General Indemnity Company ("USAA-GIC"), and assert upon

personal knowledge as to their own acts and status, and upon information and belief as to all

other matters, the following allegations:

I.      **Nature of the Action.**

1.      This is a class action lawsuit by Plaintiffs, who are insureds under Defendants

USAA's, USAA-CIC's, USAA-GIC's, and Garrison's policies of insurance for private

passenger auto physical damage (hereafter "PPA physical damage") requiring payment of Actual Cash Value ("ACV"), including sales tax, for covered total loss vehicles.

2.     Defendants' policies and documents show that sales tax equal to at least 6% of the cash value of the insured vehicle at the time of loss (the "ACV Sales Tax") is included in a total loss vehicle's coverage.[1]  This lawsuit is brought on behalf of each individual Plaintiff and on behalf of similarly situated policy insureds that have suffered damages due to Defendants' policies and practices of refusing to pay full ACV Sales Tax to first-party total loss insureds on PPA physical damage policies unless and until the insured has purchased a replacement vehicle and paid sales tax equal to or in excess of ACV Sales Tax.

3.     Before paying the ACV Sales Tax due under their PPA physical damage insurance policies for total loss vehicles, Defendants require insureds to purchase a replacement vehicle and present proof of payment of sales tax on the purchase of the replacement vehicle.  Even then, Defendants will not pay the full ACV Sales Tax unless the insured has purchased a replacement vehicle and paid sales tax on the replacement vehicle equal to or greater than the ACV Sales Tax.

4.     The requirement that insureds purchase a replacement vehicle and pay sales tax on the replacement vehicle as a condition precedent to recovering the ACV Sales Tax is an extra-contractual provision that is not included in the policy language and is prohibited by Florida law.

5.     By imposing an extra-contractual condition precedent requiring insureds to purchase a replacement vehicle and pay sales tax on the replacement vehicle, Defendants

---

[1] Florida state automotive sales tax is 6%.  Some counties impose a local tax of up to 1.5% in addition to the 6% sales tax.

breach their policies of insurance.  Defendants' policies and practices also violate the prevention of performance doctrine of Florida law.

## II.     Jurisdiction and Venue.

6.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d)(2).  This is a class action in which the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs, and any member of the class is a citizen of a state different from any Defendant.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## III.    The Parties.

### A.     Named Plaintiffs

8.     Plaintiff Chantal Bastian, at all relevant times, is and was an adult, residing in St. Johns County, Florida.  Plaintiff Bastian resides at 1575 A1A South, No. C-11, St. Augustine, Florida 32080.  Plaintiff Bastian's individual claims in this lawsuit arise from a policy of insurance issued by Garrison.

9.     Plaintiff Robert T. Beltrami III, at all relevant times, is and was an adult, residing in Flagler County, Florida.  Plaintiff Beltrami resides at 99 Smith Trail, Palm Coast, Florida 32164.  Plaintiff Beltrami's individual claims in this lawsuit arise from a policy of insurance issued by USAA.

10.     Plaintiff William Laker, at all relevant times, is and was an adult, residing in Pinellas County, Florida.  Plaintiff Laker resides at 1544 Westminster Avenue, Clearwater, Florida 33760.  Plaintiff Laker's individual claims in this lawsuit arise from a policy of insurance issued by USAA-GIC.

11.     Plaintiff Oliver Sutton, at all relevant times, is and was an adult, residing in Hillsborough County, Florida.  Plaintiff Sutton resides at 7607 Wood Violet Drive, Gibsonton, Florida 33534.  Plaintiff Sutton's individual claims in this lawsuit arise from a policy of insurance issued by Garrison.

12.     Plaintiff Sandra Adda, at all relevant times, is and was an adult, residing in Palm Beach County, Florida.  Plaintiff Adda resides at 5220 Bolero Circle, Delray Beach, Florida 33484.  Plaintiff Adda's individual claims in this lawsuit arise from a policy of insurance issued by USAA-CIC.

**B.     United Services Automobile Association.**

13.     USAA is a member of the USAA Group and authorized to issue PPA physical damage insurance policies in Florida.  USAA is a reciprocal inter-insurance exchange domiciled in Texas and USAA maintains its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288.

14.     USAA can be served with process through the Chief Financial Officer, Florida Department of Financial Services, 200 E. Gaines Street, Tallahassee, Florida 32399.

15.     USAA provides property and casualty insurance to its members, who include:

- Active, retired, and honorably separated officers and enlisted personnel of the U.S. military.

- Officer candidates in commissioning programs (Academy, ROTC, OCS/OTS).

- Adult children of USAA members who have or had a USAA auto or property insurance policy.

▪   Widows and widowers of USAA members who have or had a USAA auto or property insurance policy.

16.   USAA owns 100 percent of the common stock of USAA-CIC, USAA-GIC, and Garrison.

17.   In 2010, USAA collected over $358 million in private passenger auto insurance premiums in Florida for policies issued by USAA.  USAA was the 10th largest Florida insurer of PPA physical damage policies by premium in 2010, with over $114 million in premiums collected in Florida.

**C.     USAA Casualty Insurance Company.**

18.   USAA-CIC is a member of the USAA Group and authorized to issue PPA physical damage insurance policies in Florida.  USAA-CIC is a Texas corporation and maintains its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas, 78288.

19.   USAA-CIC's Florida registered agent for service of process is the Chief Financial Officer, Florida Department of Financial Services, 200 E. Gaines Street, Tallahassee, Florida 32399.

20.   USAA-CIC is a wholly-owned subsidiary of USAA.

21.   In 2010, USAA-CIC collected over $251 million in private passenger auto insurance premiums in Florida for policies issued by USAA-CIC.

**D.     Garrison Property And Casualty Insurance Company.**

22.   Garrison is a member of the USAA Group and authorized to issue PPA physical damage insurance policies in Florida.  Garrison is a Texas corporation that

maintains its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas, 78288.

23.     Garrison's Florida registered agent for service of process is the Chief Financial Officer, Florida Department of Financial Services, 200 E. Gaines Street, Tallahassee, Florida 32399.

24.     Garrison is a wholly-owned subsidiary of USAA-CIC, which is wholly owned by USAA.

25.     In 2010, Garrison collected over $39 million in private passenger auto insurance premiums in Florida, of which over $12 million was for PPA physical damage coverage.  In 2012, Garrison collected over $27 million in PPA physical damage premiums in Florida for policies issued by Garrison, and paid over $18 million in claims.

**E.     USAA General Indemnity Company.**

26.     USAA-GIC is a member of the USAA Group and authorized to issue PPA physical damage insurance policies in Florida.  USAA-GIC is a Texas corporation and maintains its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas, 78288.

27.     USAA-GIC's Florida registered agent for service of process is the Chief Financial Officer, Florida Department of Financial Services, 200 E. Gaines Street, Tallahassee, Florida 32399.

28.     USAA-GIC is a wholly owned subsidiary of USAA.

29.     In 2010, USAA-GIC collected over $43 million in private passenger auto insurance premiums in Florida.

## IV.   Factual Allegations.

### A.   Defendants Are Controlled By USAA.

30.    Defendants hold themselves out and identify themselves to the Florida Office of Insurance Regulation ("FOIR") as the USAA Group.  Parent company USAA controls the USAA Group and controls all actions of all Defendants relating to the illegal conduct at issue relating to Florida PPA physical damage policies.

31.    USAA has dominated and controlled USAA-CIC, USAA-GIC, and Garrison to such an extent that USAA-CIC's, USAA-GIC's, and Garrison's independent existences were in fact non-existent and USAA was in fact the alter ego of USAA-CIC, USAA-GIC, and Garrison.

32.    The corporate forms of USAA-CIC, USAA-GIC, and Garrison were used for an improper purpose to allow all Defendants improperly to retain ACV Sales Tax contrary to Florida law.

33.    The improper use of the corporate forms of USAA-CIC, USAA-GIC, and Garrison caused injury to Plaintiffs and all Class Members by withholding from each the full ACV Sales Tax.

34.    Since November 16, 2005, Defendants have made joint filings with FOIR for approval of PPA physical damage insurance policies.  Defendants commingle funds, file joint tax returns, share principal office addresses, share registered agents and officers, and use the same insurance policy and claim adjustment forms. Ex. A, USAA Annual Statement to NAIC[2] at pp. 14.6-14.7 (12/31/12);[3] Ex. B, USAA-CIC Annual Statement to NAIC at pp.

[2] NAIC is the National Association of Insurance Commissioners.

7

14.7-14.8 (12/31/12); Ex. C, Garrison Annual Statement to NAIC at pp. 14.1, 14.5 (12/31/12); Ex. D, USAA-GIC Annual Statement to NAIC at p. 14.6 (12/31/12). All Defendants use the name and trademark "USAA."

35. All Defendants have the same chief compliance officer, who is authorized to certify on behalf of each Defendant that each Defendant's actions comply with Florida laws. Ex. E, USAA Group filing certification (11/2/12).

**B.   Defendants Use Forms 5100FL To Issue PPA Physical Damage Policies.**

36. Since November 16, 2005, USAA, USAA-CIC, Garrison, and USAA-GIC have used two versions of the same insurance policy (Policy Form 5100FL) to provide PPA physical damage coverage: (1) Form 5100FL(01) 6-04 (submitted October 12, 2005, approved November 16, 2005); and (2) Form 5100FL(02) 10-12 (submitted 10/22/12).[4,5] These two versions of Form 5100FL (hereafter together called "Forms 5100FL") are identical with regard to all material terms relevant to this lawsuit. Defendants' duty to pay sales tax as part of ACV for total loss PPA physical damage claims is the same regardless of which version of Forms 5100FL was used.

---

[3] All citations to exhibits herein are to the exhibits attached to the original complaint.

[4] Defendants first used Form 5100FL(01) 6-04. Defendants added two endorsements to Form 5100FL(01) 6-04. The endorsements were Forms A400FL(01) 7-05 (submitted October 12, 2005, approved November 16, 2005); and A400FL(02) 8-06 (submitted August 22, 2006, approved December 22, 2006). The endorsements each related to the use of replacement parts for non-total loss claims and are therefore irrelevant to this lawsuit involving a class of persons who suffered total loss. The two endorsements were incorporated into the updated Form 5100FL(02) 10-12 that Defendants presently use for PPA physical damage coverage.

[5] There is no approval date for the second Form 5100FL because FOIR suspended the applicable form approval requirements of FSA § 627.410 with its June 25, 2012 Order No. 126368-12, "Order Exempting Specified Forms from the Requirements of § 627.410."

37.     All putative Class Members have had PPA physical damage coverage on one of the Forms 5100FL, and suffered a covered total loss.  The material policy terms for each Named Plaintiff and each putative Class Member are identical to the material terms of Plaintiff Bastian's policy.

**C.     Defendants Refused To Pay Full ACV Sales Tax And Imposed  Extra-Contractual Preconditions On Named Plaintiff Bastian's Total Loss Auto Claim.**

**1.     Named Plaintiff Bastian Was Issued A Form 5100FL Policy.**

38.     Plaintiff Bastian purchased an automobile insurance policy, Policy Number 02451 06 81R 7101 0, from Garrison in Florida. Ex. F, the Policy.  Plaintiff Bastian paid a six-month premium of $799.22 for the Policy, of which $353.32 was for PPA physical damage coverage.[6]  The Policy provided coverage pursuant to Form 5100FL(02) 10-12, and included the terms for PPA physical damage coverage in Part D.  The Policy's term was February 28, 2013, to August 28, 2013. Ex. G, Declarations Pages.

39.     The Policy insured Plaintiff Bastian's 2005 Acura 3.2 TL 4D, VIN 19UUA662X5A057092 (the "Insured Vehicle").  The Insured Vehicle is a "covered auto" under the terms of the Policy. *Id.*

40.     The Policy Declarations Pages provide that the coverage limit of liability for collision loss is ACV less a $1000.00 deductible. *Id.*

41.     The Policy defines ACV as follows:

**"Actual cash value"** means the amount that it would cost, at the time of **loss**, to buy a comparable vehicle.  As applied to **your covered auto**, a comparable

---

[6] The other coverages for which premiums were charged were liability, personal injury protection, and uninsured motorists.

> vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition.

Ex. F, Policy at 21.  Because Florida law imposes a sales tax on the purchase of motor vehicles, the "amount that it would cost . . . to buy a comparable vehicle" includes sales tax.

42.    The Policy provides as follows relating to PPA physical damage comprehensive and collision coverage:

> A.    Comprehensive Coverage (excluding **collision**).
>
> 1.    Physical damage.  **We** will pay for **loss** caused by other than **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations . . . .
> . . . .
>
> B.    Collision Coverage.  **We** will pay for loss caused by **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations.

*Id.* at 22.

43.    The Policy defines **Loss** as follows:

> D.    **"Loss"** means direct and accidental damage to the operational safety, function, or appearance of, or theft of, **your covered auto** or personal property contained in **your covered auto.  Loss** includes a  total loss, but does not include any damage other than the cost to **repair** or replace.  **Loss** does not include any loss of use, or diminution in value that would remain after **repair** or replacement of the damaged or stolen property.

*Id.* at 21.

44.    The Policy provides the following limit of liability for PPA physical damage coverage:

10

**LIMIT OF LIABILITY**

A.    Total loss to your **covered auto**.   Our limit of liability under comprehensive Coverage and Collision Coverage is the **actual cash value** of the vehicle, inclusive of any **custom equipment**.

> 1.  The maximum amount **we** will include for **loss** to **custom equipment** in or on **your covered auto** is $5,000.

> 2.  **We** will declare **your covered auto** to be a total loss if, in **our** judgment, the cost to **repair** it would be greater than its **actual cash value** minus its salvage value after the **loss**.

*Id.* at 23.

### 2.      Plaintiff Bastian Suffered A Total Loss To Her Covered Auto.

45.     On May 26, 2013, Plaintiff Bastian's covered auto, the Insured Vehicle, suffered a total loss.[7]

46.     Plaintiff Bastian complied with all terms of the Policy and fulfilled all of the duties that the Policy imposed on her, including her duty to timely notify Garrison of how, when, and where an accident or loss happened.

### 3.      Defendants Imposed Extra-Contractual Conditions And Refused To Pay The ACV Sales Tax.

47.     On May 31, 2013, Defendants provided Plaintiff Bastian with Defendants' claim determination for the Insured Vehicle ("Claim Determination").   Ex. H, Claim Determination (including cover letter, Claim and Payment Information, and Market Valuation Report).   The Claim Determination cover letter was on USAA letterhead, and was form 126164-0212, which also is used by USAA-CIC, and on information and belief all

---

[7] Plaintiff Bastian's original complaint mistakenly stated that a collision caused the total loss. The loss was not caused by a collision, but the difference is immaterial.  Form 5100FL policies provide, for all purposes relevant to this lawsuit, identical coverage under Comprehensive Coverage (excluding collision) and Collision Coverage.

Defendants.   The Claim Determination included a document titled "Claim and Payment Information" that also was on USAA letterhead, and was referenced as form 126309-0113. Form 126309-0113 also is used by USAA-CIC, and on information and belief, all Defendants. *Id.*

48.     The Claim Determination cover letter (form 126164-0212) reference line states "Your Claim Payment Has Been Determined."   The letter states:

> Your total-loss payment has been calculated based on your decision to transfer your vehicle ownership and is now ready.   Once we have all required forms and the claim is finalized, you'll receive your claim payment within seven business days.

Ex. H, Claim Determination, Cover Letter.

49.     The Defendants' Claim and Payment Information (form 126309-0113) provided:

**Payment:**

| | |
|---|---|
| Vehicle's actual cash value: | $10,459.00 |
| Sales tax: | $0.00 |
| Partial or Prior Payments: | $0.00 |
| Title Fee: | $75.75 |
| License Plate Fee: | $9.50 |
| Comprehensive Deductible: | $(1,000.00) |
| **Net Total:** | **$9,544.25** |

Ex. H, Claim Determination, Claim and Payment Information.

50.     The Claim and Payment Information shows $0.00 for sales tax, evidencing Defendants' refusal to pay ACV Sales Tax on the total loss.   The Claim and Payment Information page also includes an acknowledgement that ACV Sales tax is covered under the Form 5100FL policy if Plaintiff Bastian pays sales tax on a replacement vehicle.   This acknowledgement purported to be "a reminder" from the State of Florida and provided that

Plaintiff Bastian would be reimbursed ACV Sales Tax if she purchased a replacement vehicle and paid a sales tax on the replacement vehicle:

**Important Information from the state of FL**

As a reminder, if you replaced your totaled vehicle for the total loss above, you're entitled to reimbursement for the sales tax amount you incurred. However, we'll compare the sales tax amount in our settlement with the sales tax for the replacement vehicle and pay you whichever is less. We will also reimburse you up to $2.50 for any branch processing fees you paid for a replacement vehicle title.

If you would like to make a claim for sales tax and branch processing fees, please fax the replacement vehicle's bill of sale and branch processing fee receipt to 1-800-531-8669.  Remember to include your USAA number on all documents.

Ex. H, Claim Determination, Claim and Payment Information.

51.     Thus, while refusing to pay ACV Sales Tax as part of an initial payment, **Defendants admitted that they are required to pay ACV Sales Tax as part of the Policy coverage.**  Defendants incorrectly assert that payment of the ACV Sales Tax should be pre-conditioned on Plaintiff Bastian paying sales tax on the purchase of a replacement vehicle.

> **4.     Defendants' Market Valuation Report Includes Sales Tax In Its Valuation.**

52.     The May 31 Claim Determination Letter also included a Market Valuation Report by CCC Information Services Inc. purporting to support Defendants' claim and payment determination.  Ex. H, Claim Determination, Market Valuation Report.  The Market Valuation Report includes a 6% sales tax in its vehicle value determination.  *Id.* at 1.  The Market Valuation Report provides:

| | |
|---|---|
| **Base Vehicle Value** | **$ 10,050.00** |
| Condition Adjustment | + 409.00 |
| **Adjusted Vehicle Value** | **$ 10,459.00** |

13

| | | | |
|---|---|---|---|
| Vehicular Sales Tax | 6.00% | $ | 627.54 |

Sales Tax reflects all applicable state, county, and municipal taxes.

| | |
|---|---|
| License/Fees (if applicable) | $ _____ |
| **Value before Deductible** | **$ 11,086.54** |
| Deductible | $ - 1,000.00 |
| **Total** | **$ 10,086.54** |

*Id.*

53.     The Market Valuation Report shows that Plaintiff Bastian's total loss covered vehicle had a cash value before deductible of $11,086.54, and a cash value after deductible of $10,086.54.  Both of these cash values include a 6% ACV Sales Tax of the amount $627.54.  Defendants nevertheless refused to pay Plaintiff Bastian the ACV Sales Tax unless and until she purchased a replacement vehicle and paid sales tax on such replacement vehicle.

**5.     Defendants Refused To Pay ACV Sales Tax To Plaintiff Bastian When Paying The Net Settlement.**

54.     Garrison paid Plaintiff Bastian a Net Settlement of $9,544.25,[8] with $7,014.95 going to the covered auto lien holder, and $2,529.30 going to Plaintiff Bastian.  Excluded from the payment and settlement amount was the $627.54 in ACV Sales Tax owed to Plaintiff Bastian and identified in the Market Valuation Report.  Defendants wrongfully withheld payment of ACV Sales Tax even though "the amount that it would cost . . . to buy a comparable vehicle" includes sales tax.

55.     Without the $627.54 ACV Sales Tax, Plaintiff Bastian's options to purchase a replacement vehicle and pay sales tax on that vehicle were limited.  Plaintiff Bastian purchased a replacement vehicle for $2,000.00, and struggled to pay sales tax in the amount of $120.00 on the replacement vehicle.  Plaintiff Bastian submitted the proof of payment of

_____

[8] This is the amount stated on Defendants' Claim and Payment Information provided with the May 31 Claim Determination Letter.

sales tax, and Garrison waited until on or about October 5, 2013 to pay $120.00 to Bastian. Garrison thus improperly withheld payment of any ACV Sales Tax until over four months after the Claim Determination.

**6.      Defendants Continue To Wrongfully Withhold The Full ACV Sales Tax.**

56.      Garrison continues to wrongfully withhold $407.54, which is the difference between the $627.54 ACV Sales Tax determined by the Market Report, and the $120.00 sales tax that Garrison reimbursed Plaintiff Bastian.

57.      Garrison would have paid the full $627.54 in ACV Sales Tax only if Plaintiff Bastian had purchased and paid sales tax on a replacement vehicle costing $10,459.00 or more.

**D.      Defendants Use The Same Policy Forms.**

58.      All Defendants make up the USAA Group and utilize the same PPA physical damage policy forms, claim adjusting forms, and claim adjusting guidelines and procedures on Form 5100FL policies.  Attached hereto are the claims adjusting forms, communications, and determinations for a Form 5100FL policy issued by USAA-CIC.  Ex. I, USAA-CIC Claim Determination.  A comparison of the USAA-CIC claim determination documents with the Garrison claim determination documents shows that USAA-CIC and Garrison used the same forms, same communications, and same claim adjusting guidelines relating to the refusal to pay ACV Sales Tax.

59.      Public records show that USAA implements the same illegal policy of requiring an insured to purchase a replacement vehicle and pay sales tax before USAA will pay the ACV Sales Tax on a total loss covered vehicle.  Ex. J, Civil Remedy Public Record.

In a Civil Remedy Notice, a USAA insured complains of a new practice by USAA to refuse to pay ACV Sales Tax until the insured purchases a replacement vehicle.  Ex. J, Civil Remedy Public Record.  Documentary evidence thus shows that Garrison, USAA-CIC, and USAA all impose the same illegal requirements before they pay ACV Sales Tax for covered vehicles under PPA physical damage policies.

60.     On information and belief, USAA-GIC acts similarly to the other members of the USAA Group and also wrongfully withholds ACV Sales Tax from total loss PPA physical damage coverage.

**E.     Defendants Implement The Same Refusal To Pay Sales Tax On Form 5100FL Policies Issued Through USAA-CIC, USAA, And USAA-GIC.**

**1.     Plaintiff Sutton**

61.     Plaintiff Sutton purchased an automobile insurance policy issued by Garrison. The Sutton policy provided coverage pursuant to Form 5100FL(02) 10-12, and included the terms for PPA physical damage coverage in Part D.  The Sutton policy is identical in all material respects to the Policy issued to Bastian.

62.     The policy Declarations Pages provide that the coverage limit of liability for collision loss is ACV less a $100.00 deductible.

63.     On January 3, 2014, Sutton's insured 2012 Toyota Avalon suffered a total loss.

64.     Plaintiff Sutton complied with all terms of the policy and fulfilled all of the duties that the policy imposed on him, including his duty to timely notify Garrison of how, when, and where an accident or loss happened.

65.     Garrison acknowledged that the Sutton vehicle was covered and a total loss. Defendants made payment of a covered claim but refused to pay Sutton all of the ACV Sales Tax due on his total loss covered claim.

### 2.     Plaintiff Laker

66.     Plaintiff Laker purchased an automobile insurance policy, Policy Number 033185857G7101 1, issued by USAA-GIC.  The Laker policy provided coverage pursuant to Form 5100FL(02) 10-12, and included the terms for PPA physical damage coverage in Part D.  The Laker policy is identical in all material respects to the Policy issued to Bastian.

67.     The policy Declarations Pages provide that the coverage limit of liability for collision loss was ACV less a $500.00 deductible.

68.     On July 23, 2013, Laker's insured 2011 Toyota Corolla suffered total loss.

69.     Plaintiff Laker complied with all terms of the policy and fulfilled all of the duties that the policy imposed on him, including his duty to timely notify USAA-GIC of how, when, and where an accident or loss happened.

70.     USAA-GIC acknowledged that the Laker vehicle was covered and a total loss. Defendants made payment of a covered claim but refused to pay Laker all of the ACV Sales Tax due on his total loss covered claim.

### 3.     Plaintiff Beltrami

71.     Plaintiff Beltrami purchased an automobile insurance policy issued by USAA. The Beltrami policy provided coverage pursuant to a Form 5100FL, and included terms for PPA physical damage coverage in Part D. The Beltrami policy is identical in all material respects to the Policy issued to Bastian.

72.     The policy Declarations Pages provide that the coverage limit of liability for collision loss was ACV less a $500.00 deductible.

73.     On June 2, 2013, Beltrami's insured 2006 Nissan Titan suffered total loss.

74.     Plaintiff Beltrami complied with all terms of the policy and fulfilled all of the duties that the policy imposed on him, including his duty to timely notify USAA of how, when, and where an accident or loss happened.

75.     USAA acknowledged that the Beltrami vehicle was covered and a total loss. Defendants made payment of a covered claim but refused to pay Beltrami all of the ACV Sales Tax due on his total loss covered claim.

### 4.      Plaintiff Adda

76.     Plaintiff Adda purchased an automobile insurance policy issued by USAA-CIC.  The Adda policy provided coverage pursuant to a Form 5100FL, and included terms for PPA physical damage coverage in Part D. The Adda policy is identical in all material respects to the Policy issued to Bastian.

77.     The policy Declarations Pages provide that the coverage limit of liability for collision loss was ACV less a $500.00 deductible.

78.     On November 17, 2013, Adda's insured vehicle suffered total loss.

79.     Plaintiff Adda complied with all terms of the policy and fulfilled all of the duties that the policy imposed on her, including her duty to timely notify USAA-CIC of how, when, and where an accident or loss happened.

80.    USAA-CIC acknowledged that the Adda vehicle was covered and a total loss. Defendants made payment of a covered claim but refused to pay Adda all of the ACV Sales Tax due on her total loss covered claim.

**F.    Florida Law Provides That Sales Tax Is Part Of Actual Cash Value.**

81.    Florida law provides that sales tax is part of actual cash value unless unambiguously excluded from the policy.  *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) (motor home case applying Florida law holding that ACV includes sales tax unless unambiguously excluded from policy definition, and – absent policy language to the contrary – there is no condition precedent that an insured use coverage funds to purchase a replacement property before being entitled to sales tax component of ACV).

**V.    Florida Statutes Do Not Permit Defendants To Impose Extra-Contractual Conditions Precedent Or Limit The Coverage Required By The Policies.**

82.    Defendants may assert that FSA § 626.9743 overrides the policy provisions of Forms 5100FL and creates a condition precedent to the payment of ACV Sales Tax.  Any such assertion would be in error.

**A.    FSA § 626.9743 Cannot Preclude Enforcement Of Policy Provisions.**

83.    FSA § 626.9743 cannot override the terms of the Policy because FSA § 626.9743 by its terms expressly disclaims any authority to alter or preclude enforcement of policy provisions. FSA § 626.9743(10) ("Nothing in this section shall be construed to authorize or preclude enforcement of policy provisions relating to settlement disputes."). The Form 5100FL policies at issue include (1) no provision excluding sales tax from ACV; (2) no provision deferring payment of the sales tax component of ACV for any purpose; (3) no provision requiring an insured to purchase a replacement vehicle; (4) no provision

19

imposing a pre-condition to receiving ACV Sales Tax that an insured must first purchase a replacement vehicle; and (5) no provision linking the amount of covered ACV Sales Tax with the purchase price of a replacement vehicle, or the sales tax paid for a replacement vehicle.  Defendants cannot ignore the policy provisions and impose a condition precedent where one does not exist.  *Id.*

**B.** **Any Construction Of FSA § 626.9743 To Preclude Payment Of Full ACV Sales Tax Would Violate The Prevention Of Performance Doctrine.**

84.    Defendants' imposition of preconditions before paying full ACV Sales Tax violates the prevention of performance doctrine of Florida law.  By requiring an insured to purchase a replacement vehicle as a condition precedent to recovering full ACV (which includes sales tax), Defendants withhold the funds necessary to purchase the replacement vehicle (which includes sales tax).  This refusal places an unlawful hardship on insureds, including Plaintiffs, by limiting their ability to purchase a replacement vehicle, and the sales tax on the replacement vehicle.

**C.** **Construction Of FSA § 626.9743 To Preclude Payment Of Full ACV Sales Tax Would Discriminate Against Insureds.**

85.    Under Defendants' practice of withholding ACV Sales Tax until such time as sales tax payments are made on a replacement vehicle, three different policy holders would receive three different claim payments from Defendants even though (1) the material facts relating to their loss are identical, (2) the definition of ACV is the same for each policy holder, and (3) there is no requirement under the policy that a policy holder replace a total loss vehicle.

86.     Consider three Forms 5100FL policy holders (Policy Holders A, B, C), each of whom has suffered a total loss of a vehicle with an actual cash value of $10,600.00 ($10,000.00 vehicle value, and a $600.00 sales tax).[9]

87.     Under Defendants' treatment of the policy, Policy Holder A would receive payment of only $10,000.00 for his total loss vehicle if Policy Holder A did not purchase a replacement vehicle.

88.     Policy Holder B would receive payment of only $10,300.00 if Policy Holder B purchased a replacement vehicle for $5,000.00 and paid a sales tax on the replacement vehicle of $300.00.

89.     Policy Holder C would receive coverage of $10,600.00 if Policy Holder C purchased a replacement vehicle for $11,000.00 and paid a sales tax on the replacement vehicle of $660.00.

90.     Defendants' payment would be different for each of the above three policy holders depending on whether the policy holder purchased a replacement vehicle, the cost of the replacement vehicle, and the amount of tax in the location where the vehicle was purchased.  This is so even though there is: (a) nothing in the policy requiring purchase of a replacement vehicle; (b) nothing in the policy that defines or sets coverage based on purchase of a replacement vehicle; and (c) nothing in the policy conditioning any claim payment (or partial payment) on the purchase of a replacement vehicle.

---

[9] For simplicity, deductibles are excluded from this analysis.

**D.     Other Insurers With Similar PPA Physical Damage Policies And Profit Motives Do Not Illegally Withhold ACV Sales Tax.**

91.     Other PPA physical damage Florida insurers pay full ACV Sales Tax when providing actual cash value coverage for total loss first-party claims.  These insurers impose no precondition that the insured first purchase a replacement vehicle and pay sales tax on such vehicle.  Defendants are outliers on this issue because Defendants' conduct is illegal.

92.     PPA physical damage insurer Progressive American Insurance Company ("Progressive") pays ACV Sales Tax on actual cash value policies without imposing a precondition that the insurer purchase a replacement vehicle and pay sales tax on the replacement vehicle.  Ex. K, Claim and Payment Determination Document for Progressive.

93.     PPA physical damage insurer Allmerica Financial Benefit Insurance Company ("Allmerica") (a member of Hanover Insurance Group) pays ACV Sales Tax on actual cash value policies without imposing a precondition that the insurer purchase a replacement vehicle and pay sales tax on the replacement vehicle.   Ex. L, Claim and Payment Determination Document for Allmerica.

94.     PPA physical damage insurer Esurance Insurance Company ("Esurance") (owned by Allstate Corporation and marketed as an "Allstate company") uses the same vehicle valuation provider (CCC Information Services Inc.) as Defendants.   But unlike Defendants, Esurance pays ACV Sales Tax on actual cash value policies without imposing a precondition that the insurer purchase a replacement vehicle and pay sales tax on the replacement vehicle.  Ex. M, Claim and Payment Determination Document for Esurance.

95.     PPA physical damage insurer 21st Century Centennial Insurance Company ("21st Century") (a member of Farmers Insurance Group) pays ACV Sales Tax without

imposing a precondition that the insurer purchase a replacement vehicle and pay sales tax on the replacement vehicle.  Ex. N, Claim and Payment Determination Document for 21st Century.

96.     PPA physical damage insurer Direct General Insurance Company ("Direct General") pays ACV Sales Tax without imposing a precondition that the insurer purchase a replacement vehicle and pay sales tax on the replacement vehicle.  Ex. O, Claim and Payment Determination Document for Direct General.

97.     These are just the policy documents that Plaintiffs' investigation has revealed. Plaintiffs believe that the great majority of Florida insurers do not require purchase of a replacement vehicle and payment of sales tax before paying ACV Sales Tax to their total loss insureds.

## VI.     Class Representation Allegations.

### A.     Particular Provisions Of Federal Rule Of Civil Procedure 23 Under Which The Claim Is Maintainable On Behalf Of The Class.

98.     Plaintiffs' claims are maintainable on behalf of the Class pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate claims or defenses by or against individual Class Members would create a risk of: (A) inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the Class; and (B) adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other Class Members who are not parties to the adjudications, or would substantially impair or impede their ability to protect their interests.

99.    Plaintiffs' claims also are maintainable on behalf of the Class pursuant to Federal Rule of Civil Procedure 23(b)(2) because the parties opposing the Class have acted or refused to act on grounds that apply generally to all the Class Members, thereby making final injunctive relief or declaratory relief concerning the Class as a whole appropriate.  In addition, all requirements of Federal Rule of Civil Procedure 23(a) are satisfied, as alleged below.

**B.      The Questions Of Law Or Fact That Are Common To The Claims Or Defenses Of The Plaintiffs And The Claims Or Defenses Of Each Class Member.**

100.    Plaintiffs' claims raise questions of law or fact common to the questions of law or fact raised by the claims of each member of the Class.  Fed.R.Civ.P 23(a)(2).

101.    There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting the individual members of the Class. These common legal and factual questions, which exist without regard to the individual circumstances of any Class Member, include, but are not limited to, the following:

a.     Whether Defendants are required under Florida law to pay ACV Sales Tax under Forms 5100FL to claimants that suffered a first-party total loss of a covered vehicle;

b.     Whether Defendants are permitted under Florida law to condition payment of ACV Sales Tax (under policies issued as Forms 5100FL to claimants that suffered a first-party total loss of a covered  vehicle)  on  the  insured  first purchasing  a  replacement  vehicle,  paying  sales  tax  on  the  replacement vehicle, and submitting proof to Defendants; and

c.      Whether Defendants are permitted under Florida law to condition payment of *full* ACV Sales Tax (under policies issued as Forms 5100FL to claimants that suffered a first-party total loss of a covered vehicle) on the insured first purchasing a replacement vehicle and paying sales tax on the replacement vehicle equal to or greater than ACV Sales Tax.

102.    Because the central issues in this case turn on the interpretation of Forms 5100FL – an insurance contract that is common to all Class Members and all Defendants – this case is especially well-suited to class adjudication.  Defendants and all members of the Class are bound by the same material terms of the Forms 5100FL insurance policies, and the central issues in the case all involve interpretation of the same material and controlling terms.

**C.     The Particular Facts And Circumstances That Show The Claims Or Defenses Advanced By The Plaintiffs are Typical Of the Claims Or Defenses Of Each Class Member.**

103.    Plaintiffs' claims are typical of the claims of each Class Member. Fed.R.Civ.P 23(a)(3).

104.    Plaintiffs and Class Members all suffered damages as a direct proximate result of the same wrongful practices by Defendants.  Plaintiffs' claims arise from the same practices and course of conduct – Defendants' refusal to pay full ACV Sales Tax for first-party total loss claims under PPA physical damage policies issued under Forms 5100FL. Plaintiffs' claims are based upon the same legal theories as those of the Class Members.  The Plaintiffs suffered the same harm as all the other Class Members: Defendants' failure to pay full ACV Sales Tax.

**D.      The Approximate Number Of Class Members, Definition Of The Alleged Class, And The Particular Facts And Circumstances That Show The Representative Parties Will Fairly And Adequately Protect And Represent The Interests Of Each Member Of The Class.**

**1.      Approximate Number Of Class Members.**

105.    The members of the Class are so numerous that separate joinder of each member is impracticable. Fed.R.Civ.P 23(a)(1).

106.    Garrison paid $18,041,035 in 2012 Florida direct property and casualty losses after deducting for salvage for PPA physical damage policies issued under Forms 5100FL. *See* Ex. P, FOIR data of Garrison historical premium/claims.  Assuming very conservatively that only eight percent of those loss payments were for total losses (as opposed to vehicle repair),[10] Garrison paid approximately $1,443,000 in Florida total loss PPA physical damage claims in 2012.  Assuming the average cost of a replacement vehicle is $15,000.00, there would be 96 insureds who suffered a covered total loss for policies issued by Garrison for 2012 alone.[11]  If one-half of those did not purchase a replacement vehicle, purchased a replacement vehicle for less than the ACV of the insured vehicle, or did not make a showing of sales tax payment on a replacement vehicle, the number of Class Members that were issued policies by Garrison would be 48 for 2012 alone.  For the years 2009-2012, Garrison paid $42,195,041 in direct property and casualty losses after deducting for salvage. *See* Ex.

---

[10]  Plaintiff believes that approximately 8% of claims are total loss claims. *See* http://www.progressive.com/claims/total-loss/ (disclosure by Progressive Insurance Company that 8% of claims are total loss).  Plaintiff believes that, because total loss claims are claims that exceed the cost of repair, the approximation that 8% of claims paid are for total loss claims is a reasonable and conservative approximation.

[11]  This estimate is low because of the use of paid claims *after* salvage deducted.  The claims paid without salvage deducted is the actual amount in claims paid and would be higher than the claims paid amount used in this analysis.

P, FOIR data of Garrison historical premium/claims.  Applying 8% total loss claims and $15,000.00 average vehicle value, the number of Class Members for Garrison alone for the period 2009-2012 (assuming ½ of the total loss insureds did not receive their full ACV Sales Tax) is over 110.[12]  Including all years within the five-year statute of limitations (part of 2008 through 2013), the number of Class Members is greater.

107.    When including policies issued by the other larger Defendants, Plaintiffs believe the number of Class Members is over 500.  Garrison issued the least amount of PPA physical damage insurance of all Defendants.[13]  The number of Class Members who were issued PPA physical damage policies by each of Defendants USAA, USAA-CIC, and USAA-GIC is greater than the number of Class Members issued policies through Garrison. According to NAIC, while Garrison issued $345 million in PPA physical damage coverage nationwide in 2012, USAA-GIC, who after Garrison issued the next least amount, issued $487 million PPA physical damage coverage.   USAA and USAA-CIC each issued significantly more PPA physical damage coverage, each writing approximately $1.7 billion and $1.3 billion in PPA physical damage coverage respectively.

---

[12] If the average ACV was 10,000.00, the number of putative Class Members for Garrison alone for the period 2009 through 2012 would be 337.

[13] According to their NAIC 2012 Financial Profiles, Defendants each collected the following amount of total direct premiums and PPA physical damage premiums nationwide in 2012: Garrison – $959,053,765 in total direct premiums, 36% of which ($345,259,354) was for PPA physical damage coverage; USAA – $6.4 billion in total direct premiums, 27 percent ($1.7 billion) of which was for PPA physical damage coverage; USAA-CIC – $4.3 billion in total direct premiums, 30 percent ($1.3 billion) of which was for PPA physical damage coverage; USAA-GIC – $1.4 billion in total direct premiums, 36 percent $486,752,235.84 of which was for PPA physical damage coverage. Ex. Q, NAIC 2012 Financial Profiles for USAA, USAA-CIC, Garrison, and USAA-GIC.

108.    The members of the Class are easily and readily identifiable from information

and records in Defendants' possession, control, or custody.

> **2.      Class Definition.**

109.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil

Procedure 23, on behalf of themselves and the following Class:

> All Florida residents insured for PPA physical damage by a Defendant under a
> Form 5100FL policy who suffered a first-party total loss of a covered vehicle
> at any time during the 5 years prior to the filing of this lawsuit, whose claims
> were adjusted by a Defendant as a total loss claim, whose claims resulted in
> payment by a Defendant of a covered claim, and who were not paid the full
> ACV Sales Tax.

> **3.      Particular Facts And Circumstances Showing Plaintiffs Will
> Fairly And Adequately Protect And Represent The Interests Of
> Each Member Of The Class.**

110.    Plaintiffs can and will fully and adequately protect and represent the interests

of each Class Member and have retained class counsel who are experienced and qualified in

prosecuting class actions, including consumer class actions and other forms of complex

litigation. Fed.R.Civ.P. 23(a)(4). Neither Plaintiffs nor their counsel have interests that are

contrary to, or conflicting with, those interests of the Class.

> **E     The Particular Facts And Circumstances That Support The Conclusions
> Required Of The Court In Determining That The Action May Be
> Maintained As A Class Action Pursuant To The Particular Provision Of
> Civil Procedure Rule 1.220(b).**

111.    The action may be maintained as a class action pursuant to Federal Rule of

Civil Procedure 23, subdivisions (b)(1)(A), (b)(1)(B), and (b)(2).

### 1.    Rule 23(b)(1)(A).

112.    There is the potential for inconsistent or varying adjudications concerning individual Class Members.  The relevant insurance policy provisions for each Class Member are the same.  The relevant law relating to the interpretation and application of those policy provisions for each Class Member is the same.  Without a single adjudication as to the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal and factual issues.

### 2.    Rule 23(b)(1)(B).

113.    Allowing the issues to be adjudicated in a piece meal fashion likely would result in certain Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

### 3.    Rule 23(b)(2).

114.    The Defendants have acted or refused to act on the same grounds that are generally applicable to all of the Class Members, thereby making final injunctive relief or declaratory relief concerning the Class as a whole appropriate.  Defendants have created and implemented a policy applicable to all Class Members.  All Class Members are insured under Forms 5100FL and have been injured by Defendants' refusal to pay full ACV Sales Tax. Defendants all use Forms 5100FL and have interpreted the ACV in the same unlawful manner, and will continue to do so absent declaratory and injunctive relief.  Final injunctive or declaratory relief therefore is proper.

**F.      This Class Action Is The Superior Method For Adjudication.**

115.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, *inter alia*: it is economically impracticable for the Class Members to prosecute individual actions; prosecution as a class action will eliminate the possibility of repetitious and redundant litigation; a class action will enable claims to be handled in an orderly, expeditious manner; and a class action will eliminate the possibility of inconsistent results.

**G.      This Class Action Is Manageable.**

116.    This class action is manageable.  All of the information relevant to Plaintiffs' claims is in the possession of Defendants, and accessible. Further, because the policy language at issue is the same, once the legal issue of construction of the insurance contract is determined, damages can be determined by a simple mathematic formula by taking the ACV Sales Tax (which already has been determined for each Class Member as part of the claim adjusting process Market Valuation Report) and deducting from that amount any sales tax paid to the Class Member by Defendants.

## COUNTS

### Count I – Breach of Contract

117.    Plaintiffs incorporate by reference all allegations of all prior paragraphs as though fully set forth herein.

118.    This Count is brought by all Plaintiffs on behalf of the Class.

119.    Plaintiffs were each party to an insurance contract with Defendants.

120.    Each Class Member was a party to an insurance contract with a Defendant that was an alter ego with all Defendants under Forms 5100FL.

121.    The material provisions of Forms 5100FL, as outlined above, are identical for Plaintiffs and all Class Members.

122.    The interpretation of all such insurance contracts is governed by Florida law.

123.    Plaintiffs and each Class Member made a claim determined by Defendants to be a first-party total loss under their insurance contract, and determined by Defendants to be a covered claim.

124.    Plaintiffs and each Class Member complied with all terms of their insurance contracts and fulfilled all of their duties that the insurance contracts imposed on them.

125.    Plaintiffs and each Class Member's insurance contract required Defendants to pay full ACV Sales Tax without a condition precedent that Plaintiffs or the Class Member first purchase a replacement vehicle.

126.    Plaintiffs and each Class Member's insurance contract required Defendants to pay full ACV Sales Tax without a condition precedent that Plaintiffs or Class Members first purchase a replacement vehicle and pay a sales tax on the replacement vehicle equal to or greater than the ACV Sales Tax.

127.    Defendants refused to pay Plaintiffs' and each Class Member's full ACV Sales Tax, and in so doing Defendants breached their insurance contracts with Plaintiffs and each Class Member.

128.   By imposing a condition precedent that Plaintiffs and Class Members first purchase a replacement vehicle and pay sales tax equal to or greater than ACV Sales Tax, Defendants violated the prevention of performance doctrine of Florida law.

129.   Nothing in FSA § 626.9743 overrides the plain language of Forms 5100FL. Further, construction of FSA § 626.9743 to override the policy provisions of Forms 5100FL and Florida common law would violate the prevention of performance doctrine of Florida common law, would violate the due process and equal protection clauses of the Florida Constitution, and would violate the freedom of contract guaranteed by the Florida Constitution.

130.   Plaintiffs and the Class Members have suffered monetary damage because Defendants have refused to pay and willfully withheld the full amount of ACV Sales Tax as described above.

**Count II – Declaratory Judgment**

131.   Plaintiffs incorporate by reference all allegations of all prior paragraphs as though fully set forth herein.

132.   This Count is brought by Plaintiffs individually and on behalf of the Class.

133.   Defendants have a practice and policy of imposing an extra-contractual condition precedent in their PPA physical damage insurance policies issued under Forms 5100FL for first-party total loss claims.

134.   Defendants have a practice and policy of breaching their insurance contracts with Plaintiffs and Class Members relating to the payment of full ACV Sales Tax on PPA

physical damage insurance policies issued under Forms 5100FL for first-party total loss claims.

135.    Plaintiffs and the Class Members have been harmed by Defendants' refusal to pay full ACV Sales Tax under their insurance contracts.

136.    Defendants have acted and refused to act relating to payment of the ACV Sales Tax on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

137.    Plaintiffs and the Class Members are entitled to declaratory judgment that Forms 5100FL require Defendants to pay the full ACV Sales Tax regardless of whether a replacement vehicle is purchased and regardless of the amount of sales tax paid relating to the replacement vehicle.

138.    There is a bona fide, actual, present, and practical need for the declaration sought because Defendants' illegal conduct has harmed Plaintiffs and all Class Members, and will continue to harm other insureds who in the future will not receive full ACV Sales Tax as required by their insurance contracts.

139.    The requested declaration deals with a present, ascertained, and ascertainable state of facts and a present controversy relating to Defendants' practices of refusing to pay ACV Sales Tax on PPA physical damage policies for total loss vehicles unless their insureds first purchase a replacement vehicle and pay sales tax on the replacement vehicle.

140.    The rights of Plaintiffs, Class Members, and other insureds (who will suffer future total losses or whose total loss claims are presently being adjusted) depend on the law applicable to the facts of this case.

141.     Defendants have an adverse interest in the subject matter of this lawsuit in fact and law.

142.     All interested entities are before the Court by proper process and class representation and the relief sought is not merely giving legal advice by the courts or the answer to questions propounded from curiosity.

### Count III – Attorneys' Fees

143.     Plaintiffs incorporate by reference all allegations of all prior paragraphs as though fully set forth herein.

144.     Upon the rendition of a judgment or decree by this Court against Defendants and in favor of Plaintiffs and/or Class Members, FSA § 627.428 requires that this Court shall adjudge or decree against Defendants and in favor of Plaintiffs and/or Class Members a reasonable sum as fees or compensation for their attorneys prosecuting the suit in which the recovery is had. FSA § 627.428(1).[14]

145.     Such compensation or fees of the attorneys shall be included in the judgment or decree rendered in the case. FSA § 627.428(3).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs individually and on behalf of the Class pray for relief and judgment as follows:

A.     For an order certifying this action as a class action on behalf of the Class described above;

---

[14] *All Underwriters v. Weisberg,* 222 F.3d 1309, 1315 (11th Cir. 2000), *cert. denied.* 531 U.S. 1061 (2000)(holding that FSA § 627.428 is substantive law for purposes of *Erie* and awarding attorneys' fees pursuant to that provision).

      B.     For restitution and/or disgorgement of all amounts wrongfully withheld from Plaintiffs and Class Members;

      C.     For damages according to proof;

      D.     For a declaration that Defendants are required under policies issued pursuant to Forms 5100FL to pay ACV Sales tax without precondition that the insured purchase a replacement vehicle and pay sales tax on the replacement vehicle;

      E.     For an award of attorneys' fees as appropriate pursuant to FSA § 627.428;

      F.     For costs of suit herein incurred;

      G.     For both pre- and post-judgment interest on any amounts awarded; and

      H.     For such other and further relief as the Court may deem proper.

Dated this 19th day of December, 2014.

/s/ Tracy L. Markham
Tracy L. Markham
Florida Bar No. 0040126
Avolio & Hanlon, P.C.
2800 N 5th Street, Suite 302
St. Augustine, Florida 32084
Phone: (904) 794 7005
Facsimile: (904) 794 7007
tlmarkhamlaw@gmail.com

/s/ Christopher B. Hall
Christopher B. Hall
Georgia Bar No. 318380
Motion to Appear Pro Hac Vice to be filed
Hall & Lampros, LLP
1230 Peachtree Street, NE, Suite 950
Atlanta, GA 30309
Phone: (404) 876-8100
Facsimile: (404) 876-3477
chall@hallandlampros.com

Attorneys for Plaintiffs

35