**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CHANTAL BASTIAN, SANDRA ADDA, ROBERT BELTRAMI, WILLIAM LAKER, OLIVER SUTTON, on behalf of themselves and all others similarly situated,

Plaintiffs,

v. Case No. 3:13-cv-1454-J-32MCR

UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA CASUALTY INSURANCE COMPANY, GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, and USAA GENERAL INDEMNITY COMPANY,

Defendants.

---

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

In a case of first impression, five policyholders contend that four insurance companies do not fully compensate their Florida auto insurance policyholders when their vehicles are totaled because the insurers reimburse only the amount of sales tax actually incurred in buying replacement vehicles rather than the full amount of sales tax that would be incurred if policyholders bought vehicles comparable their covered vehicles. The insurance companies had moved to dismiss on the grounds that neither Florida law nor the policies require them to pay more than the sales tax actually incurred. The Court denied the motion without prejudice, concluding that the issue would be best decided on a full record after discovery.

The parties have now completed focused discovery. The insurance companies move for summary judgment on essentially the same grounds, but this time with added historical information on the development of the relevant Florida statute and on their own claims adjustment practices. Plaintiffs, too, have marshaled evidence of the insurance companies' practices and those of other insurers that the plaintiffs argue support summary judgment in their favor. These cross motions have been fully briefed. (Docs. 47, 65, S-68, 75, 88, 89.) On May 18, 2015, the Court held a hearing, the record of which is incorporated herein. (Docs. 78, 86.)

## I. BACKGROUND

This case began as a proposed class action brought by one named plaintiff, Chantal Bastian, on her own behalf and on behalf of the Florida policyholders of Garrison Property and Casualty Insurance Company, United Services Automobile Association, USAA Casualty Insurance Company, and USAA General Indemnity Company (collectively, "USAA"). (Doc. 2.) Bastian herself was insured only by Garrison, though USAA has not moved on her potential lack of standing. (Doc. 9 at 3 n.1; Doc. 47 at 3 n.2.) Instead, during summary judgment briefing, the parties agreed that Bastian would amend her complaint to add four named plaintiffs—Sandra Adda, Robert Beltrami, William Laker, and Oliver Sutton—who were insured by the remaining three insurance companies, with the understanding that any ruling in USAA's favor would apply to all the named plaintiffs. (Doc. 59 at 2.) The Court granted leave to amend and adopted the same understanding. (Doc. 66.)

The underlying facts with respect to each named plaintiff are not substantially in dispute. The parties largely agree that each plaintiff was insured by one of the

defendants, suffered a total loss on the covered vehicle, made a claim, and received payment on the claim that did not include the full sales tax on a vehicle of comparable value to the covered vehicle. The parties agree that the challenge to USAA's treatment of sales tax is a legal issue for the Court. The facts set forth below are therefore undisputed unless otherwise noted.

Bastian's experience is the most well-developed in the record and is said to be emblematic of the experiences of the remaining named plaintiffs and of the class. Bastian took out a six-month auto insurance policy with Garrison to cover her 2005 Acura TL from February 28, 2013 to August 28, 2013. (Doc. 47-1.) On May 26, 2013, she reported to Garrison that a tree fell on the vehicle. (Doc. 52, ¶ 2.) Five days later, on May 31, 2013, Garrison sent Bastian a letter confirming that the vehicle had been determined to be a "total loss" and breaking down as follows the payments Garrison would make under her policy:

| | |
|---|---|
| Vehicle's actual cash value: | $10,459.00 |
| Sales tax: | $0.00 |
| Partial or Prior Payments: | $0.00 |
| Title Fee: | $75.75 |
| License Plate Fee: | $9.50 |
| Comprehensive Deductible: | $(1,000.00) |
| **Net Total:** | **$9,544.25** |

(Id., ¶ 3; Doc. 52-1 at 4.) After this breakdown, the letter included the statement:

**Important Information from the state of FL**

> As a reminder, if you replaced your totaled vehicle for the total loss above, you're entitled to reimbursement for the sales tax amount you incurred. However, we'll compare the sales tax amount in our settlement with the sales tax for the replacement vehicle and pay you whichever is less. We will also reimburse you up to $2.50 for any branch processing fees you paid for a replacement vehicle title.

(Doc. 52-1 at 4.)

Garrison enclosed with the letter a market valuation report setting out how it reached its determination of the actual cash value of the vehicle. (Id. at 6-23.) The report also includes a calculation that the 6% sales tax on a comparable vehicle would be $627.54, but, consistent with the statement above, Garrison did not include any sales tax in its initial settlement. (Id. at 6.) Instead, Garrison paid off the outstanding loan on the vehicle from the settlement and directly paid Bastian the remaining $2,529.30. (Doc. 52, ¶ 5; Doc. 52-2 at 2.) Bastian apparently later purchased a replacement vehicle for $2,000 and submitted a canceled check to the Florida Department of Revenue for $120 as proof of the sales tax she paid. (Doc. 52-3.) Garrison eventually reimbursed her that amount. (Doc. 52-4.) Bastian claims that, under her policy, Garrison should have paid her upfront the full $627.54 sales tax estimated for a $10,459 vehicle, which was the totaled vehicle's actual cash value as defined by the policy, and not reimbursed her for only the $120 in sales tax she actually paid to buy a less expensive replacement.

Adda, Beltrami, Laker, and Sutton allegedly had similar experiences in 2013 and 2014 with USAA Casualty Insurance Company, United Services Automobile Association, USAA General Indemnity Company, and Garrison, respectively. (Doc. 67, ¶¶ 61-80.) The plaintiffs allege that every Florida USAA policyholder whose vehicle has been declared a total loss in the past five years has similarly been denied the full sales tax to which they are entitled under their policies. (See id., ¶¶ 36-37, 58-60, 104, 109, 114, 123-28, 133-34.) The plaintiffs therefore bring a three-count complaint

against USAA for damages due to breach of contract, for declaratory judgment, and for attorney's fees pursuant to section 627.428 of the Florida Statutes. (Id., ¶¶ 117-45.)

## II. STANDARD OF REVIEW

Summary judgment is proper "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1314 (11th Cir. 2011); Fed. R. Civ. P. 56(a), (c). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). "When the only question a court must decide is a question of law, summary judgment may be granted." Saregama India Ltd. v. Mosley, 635 F.3d 1284, 1290 (11th Cir. 2011). Contract and statutory interpretation are both questions of law appropriately decided on summary judgment. Id.; Rectory Park, L.C. v. City of Delray Beach, 208 F. Supp. 2d 1320, 1329 (S.D. Fla. 2002).

## III. ANALYSIS

Plaintiffs root their position on the payment of sales tax in the language of USAA's standard Florida auto insurance policy, contending that nothing in the Florida Insurance Code dictates handling sales tax any differently than the policy. USAA, on the other hand, argues first that the Florida Insurance Code permits its treatment of sales tax and only then turns to its standard Florida policy, which it reads, both alone and with the statute, to allow the payment of sales tax only in the amount actually incurred. Because the insurance policy comprises the agreement between the insured

and the insurer and determines the scope and extent of coverage, the Court determines to start with the language of the policy. See Eddy v. Cont'l Cas. Co., 784 F. Supp. 2d 1331, 1336 (M.D. Fla. 2011).

### A. The Policy

The auto insurance policies were written on USAA policy Form 5100FL ("the Policy").[1] (Doc. 47-1.) Part D of the Policy sets forth the relevant coverage provided for physical damage:[2]

> **We** will pay for **loss** . . . to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations.

(Id. at 32.) "Loss," like the other emboldened terms, is predefined in the Policy:

> "**Loss**" means direct and accidental damage to the operational safety, function, or appearance of, or theft of, **your covered auto** or personal property contained in **your covered auto**. **Loss** includes a total loss, but does not include any damage other than the cost to **repair** or replace. **Loss** does not include any loss of use, or diminution in value that would remain after **repair** or replacement of the damaged or stolen property.

(Id. at 31.) Part D also includes a "**LIMIT OF LIABILITY**" for physical damage, which

---

[1] The only issued policy filed with the Court is Bastian's, which was written on Form 5100FL(02) Rev. 10–2. (Doc. 47-1.) No one has filed copies of the policies issued to Adda, Beltrami, Laker, or Sutton, though the policies were all allegedly written on some version of Form 5100. (Doc. 67, ¶¶ 61, 66, 71, 76.) Plaintiffs have filed a copy of Form 5100FL(01) Rev 6–04 that they received from the State of Florida, which is apparently the version just prior to 5100FL(02) Rev. 10–2. (Id., ¶ 36.) It appears upon review to be identical to Form 5100FL(02) Rev. 10–2 in all aspects relevant here. (Doc. 71-4.) USAA has not drawn any distinction between the forms for purpose of summary judgment, but moves against all the named plaintiffs.

[2] The "**INSURING AGREEMENT**" section of Part D differentiates between "Comprehensive Coverage" and "Collision Coverage," but the pertinent language is the same under either coverage and, at least in Bastian's case, so is the deductible. (Id. at 7, 31.)

in the case of a "[t]otal loss to **your covered auto**," is "the **actual cash value** of the vehicle, inclusive of any **custom equipment**." (Id. at 33.) A total loss is declared when, "in [USAA's] judgment, the cost to **repair** it would be greater than its **actual cash value** minus its salvage value after the **loss**." (Id.)

"Actual cash value" is another defined term in the Policy:

> "**Actual cash value**" means the amount it would cost, at the time of **loss**, to buy a comparable vehicle. As applied to **your covered auto**, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition.

(Id. at 30.) The Policy also includes in its "**GENERAL PROVISIONS**" section the statement that "If any terms of this policy conflict with state or local law, state or local law will apply." (Id. at 37.)

USAA argues that nothing in the above language either explicitly or implicitly obligates USAA to pay any sales tax whatsoever on the purchase of a replacement vehicle. Instead, the Policy provides recovery only for "loss," defined as "direct and accidental damage," which USAA believes does not include sales tax, an excise tax on a transaction, not a component of the value of a vehicle. Though USAA has always elected to pay sales tax, it sees nothing in the Policy dictating that the amount of sales tax it pays must be equal to the sales tax that would be owed on a vehicle of comparable value to the covered vehicle. Instead, it reads the "cost . . . to buy a comparable vehicle" encapsulated in the Policy by the term "actual cash value" not as a guaranteed minimum payment on a total loss, but a limit on liability. Moreover, USAA believes that, even if it had a contractual obligation to pay sales tax, no policy provision specifies that it pay sales tax on a comparable vehicle even if the insured buys a less

expensive replacement vehicle.

The plaintiffs respond that USAA's present policy interpretation is inconsistent with its long history of paying sales tax on total losses, along with title and licensing fees. Plaintiffs have reviewed USAA's internal operating procedures and responses to policyholder complaints and find that USAA never claimed the Policy language supported its decision to pay only incurred sales tax, but instead only ever cited to the Florida Insurance Code. By the plaintiffs' reading of the Policy, "loss" includes the cost of replacing the covered vehicle, which in turn includes the sales tax that comes with buying a comparable replacement vehicle. Moreover, the Policy is an "actual cash value" policy that, according to the plaintiffs, makes the "actual cash value" of the covered vehicle both a limitation on USAA's liability and, in the case of a total loss, the actual coverage provided. They argue that, like "loss," the phrase "actual cash value" includes "the amount that it would cost, at the time of loss, to buy a comparable vehicle." Thus, the plaintiffs believe they are entitled to the full amount of sales tax that would be due on such a vehicle, regardless of whether they actually decide to purchase one.

The Court has closely reviewed the Policy and agrees with plaintiffs that the Policy requires payment of sales tax in the amount that would be due on the purchase of a vehicle of comparable value to the covered vehicle at the time of loss. The essential undertaking in the Policy with respect to physical damage is that USAA "will pay for **loss** . . . ." The definition of "Loss" says that it is "direct and accidental damage" to the covered vehicle. It then states in a second sentence that "**[l]oss** includes a total loss,

but does not include any damage other than the cost to **repair** or replace." Logically, then, a total loss would include the cost to replace the covered vehicle.

USAA makes much of the fact that "actual cash value" is the upper, not lower, limit of liability. But in an affidavit to its motion, USAA acknowledges that it intended to pay Bastian the "actual cash value" of her vehicle. (Doc. 52, ¶¶ 4-5.) Moreover, the Court, like the plaintiffs, has a difficult time conceiving of how a covered vehicle could be declared a total loss under the Policy—meaning that "the cost to repair it would be greater than its actual cash value minus its salvage value after loss"—but USAA would not be obligated to pay its coverage limits—the actual cash value of the covered vehicle less the deductible. And since the phrase "actual cash value" means "the amount that it would cost, at the time of loss, to buy a comparable vehicle," USAA would, again, be obligated to pay what it would cost to replace the covered vehicle, including sales tax.

Though there are differences between this case and the situation in Mills v. Foremost Insurance Co., the Court agrees with the Eleventh Circuit's easily-reached conclusion that state and local taxes are part of the cost of replacing an item. 511 F.3d 1300, 1305 (11th Cir. 2008). In Mills, the court was presented with a mobile home insurance policy, but with a definition of "actual cash value" similar to the one here. Id. The court concluded that tax on replacement parts was part of their actual cash value because they were necessary to repair the damaged motor home. Id. So, too, is sales tax an unavoidable component of the cost to buy a replacement vehicle.

The Court is unpersuaded that the Louisiana intermediate appellate court

decision in Clark v. Clarendon Ins. Co., 841 So. 2d 1039 (La. Ct. App. 2003) mandates a different conclusion. In that case, the court concluded sales tax was not part of the actual cash value of a vehicle. Id. at 1046. But the policy there did not define actual cash value, so the court selected a definition resembling fair market value. Id. Importantly, the Policy here supplies a different definition, one equating actual cash value to the cost of buy a vehicle of equal value. The Court disagrees with USAA that the characterization by the Florida Supreme Court of sales tax as an excise tax on a transaction means that sales tax is not part of the cost of replacing the covered vehicle under an auto insurance policy. (Doc. 47 at 22 (quoting Campus Commc'ns, Inc. v. Dep't of Revenue, 473 So. 2d 1290, 1293 (Fla. 1973)).)

USAA's actual practices are inconsistent with its present position that sales tax is not covered at all by the Policy. USAA says it only pays sales tax because section 626.9743(5)(a), Florida Statutes seems to require it to do so any time it elects a cash settlement based on the actual cost to purchase a comparable motor vehicle. The Court will discuss section 626.9743 further below. But, as detailed in USAA's motion, even before section 626.9743 was enacted, and after its predecessor regulation was repealed, USAA's practice was to pay sales tax, first at the time of settlement (as plaintiffs contend here should be done) and later as incurred.[3] So even absent any

[3] The Court recognizes the common sense in plaintiffs' suggestion that USAA's current internal operating procedures and responses to policyholder complaints would likely have cited to the Policy in addition to section 626.9743 if USAA believed the Policy supported its treatment of sales tax. But the Court is unwilling to go so far as to say that failure to specifically reference the Policy in either the procedures or the responses must mean that USAA's practices are contrary to the Policy.

statutory or regulatory direction, USAA recognized an obligation to pay sales tax under its Policy.

USAA's practice of paying title fees and license plate fees also cuts against the argument that sales tax is not part of the cost of buying a comparable vehicle. According to USAA, it treats those fees differently than sales tax because there is no statute dictating if and how it must pay title and license plate fees, while there is one for sales tax. This argument is backward. If a statutory directive is not the source of USAA's obligation to pay title and license plate fees, that leaves only the Policy. USAA's choice of "the conservative approach" of paying these fees upfront is an acknowledgment that they may be covered under the Policy. Setting aside the issues of amount and timing, it is inconsistent for USAA to pay these fees (which would not seem to qualify as "loss" under in USAA's preferred definition) and to then contend that sales tax is not covered at all.

Similarly, USAA's insistence that its policy limits for physical damage are the costs actually incurred is divorced from its practice of paying the actual cash value of the covered vehicle. USAA paid upfront the full value of Bastian's covered vehicle less her deductible. (Doc. 52-1.) USAA did not demand that she return $8,459 when she incurred only $2,000.00 in cost for her replacement vehicle, not the $10,459 USAA estimated it would cost to buy a vehicle comparable to the covered vehicle. And for good reason. Bastian's vehicle sustained a total loss, entitling her under the Policy to the "amount that it would cost, at the time of loss, to buy a comparable vehicle," regardless of whether or not she actually bought such a vehicle. For this, and all the

reasons discussed above, the Court holds that the Policy does require payment of the full amount of sales tax that would be due on a vehicle comparable to the covered vehicle, regardless of whether that amount is actually incurred.[4]

**B. Section 626.9743, Florida Statutes**

USAA resists relying on the language of the Policy alone to determine the proper handling of sales tax. USAA believes that the Florida Insurance Code is part of the Policy and that, in particular, section 626.9743, Florida Statutes permits USAA to pay sales tax only in the amount actually incurred. Though the Court has concluded that the Policy language provides different coverage, it will explore the role the statute plays here. Moreover, to the extent the Policy might be considered ambiguous on the treatment of sales tax, the Court will see what, if any, clarity the statute provides.

The Florida Unfair Insurance Trade Practices Act, Fla. Stat. §§ 626.951-.99, includes a provision on the appropriate adjustment and claim settlement practices for motor vehicle insurance claims. Section 626.9743 provides, in part:

> (5) When the insurance policy provides for the adjustment and settlement first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, the insurer shall use one of the following methods:
> (a) The insurer may elect a cash settlement based upon the actual cost to purchase a comparable motor vehicle, including sales tax, if applicable pursuant to subsection (9). . . .
>
> . . . .

[4] In reaching this conclusion, the Court does not rely upon the internal USAA e-mails quoted in plaintiffs' combined response and motion for summary judgment. (Doc. S-68 at 3; see Doc. S-69-1.) The e-mails reveal an interesting internal debate at USAA about whether the Policy requires payment of sales tax, but do not dictate how the Policy should be interpreted or even necessarily prove that the policy language is ambiguous.

(9) If sales tax will necessarily be incurred by a claimant upon replacement of a total loss or upon repair of a partial loss, the insurer may defer payment of the sales tax unless and until the obligation has actually been incurred.

(10) Nothing in this section shall be construed to authorize or preclude enforcement of policy provisions relating to settlement disputes.

Fla. Stat. § 626.9743 (emphasis added).[5]

USAA's unchallenged recitation of the history of section 626.9743 indicates that the idea behind subsection (5) began as a 1978 directive from the state agency regulating the insurance industry that insurers must pay sales tax as part of paying total vehicle loss claims. (Doc. 47-2.) In 1982, the directive came to include language allowing insurers to pay sales tax only once it has been incurred. (Doc. 47-6; see Doc. 47-4.) The directive eventually became a regulation in 1992, which was later repealed in 2001, before essentially the same language was codified in 2004 in the form of section 626.9743. (Doc. 47-4; Doc. 47-6.)

The industry standard auto policy forms in effect throughout these periods (and submitted to the Court by USAA) include similar insuring language for property damage and no references to sales tax.[6] (See, e.g., Docs. 47-3, 47-5, 47-7, 47-9.) At least

[5] Subsection (5)(a) goes on to specify how to determine the value of a comparable vehicle, while subsections (b), (c), and (d) permit insurers to utilize other settlement methods, like offering a replacement vehicle or any other method that is either adequately documented and explained to the claimant or agreed to by the claimant. Id. The Court does not find these subsections directly relevant here because, in settling Bastian's claim, USAA clearly used the method in subsection (5)(a).

[6] USAA concludes that because the State has never required insurers to change their policies, the language of the policies must have already properly allowed the insurers to reimburse sales tax only in the amount actually incurred. (Doc. 47 at 6-7.) The Court finds it a stretch to interpret the State's silence on the subject to be tacit

as early as 1999, USAA's internal operating procedure for Florida was not to wait until sales tax was incurred, but to pay it at full replacement value at the time of settlement. (Doc. S-58-1 at 2.[7]) USAA changed its Florida procedure in 2001 (oddly, *after* the regulation was repealed) to pay sales tax only in the amount actually incurred. (Id. at 4-5, 7-8.) This remains USAA's practice in Florida for payment of sales tax.[8] (Id. at 10-12, 14-15, 17-24.)

---

approval of this practice. There is no indication in its directives that the State was addressing policy language, rather than its own understanding of Florida law. Moreover, if the State did mean to interpret policy language, then its interpretation is in conflict with USAA's contention (debunked earlier) that the Policy alone does not require payment of sales tax at all. If the State meant to interpret Florida law, and not policy language, there would be no need to change the policy language if, as USAA suggests, the language of statutes like section 626.9743 should be read into the Policy. It is also possible that the standard policy language did not change because, as the plaintiffs contend, subsection (9) is optional and most insurers chose not to take that option.

[7] The Court permitted the parties to file under seal certain USAA internal operating procedures and other documents. (Docs. 56, 66.) The Court also allowed plaintiffs to file under seal an unredacted version of their brief and a redacted version in the public docket. (Doc. 66.) This Order cites these sealed materials as necessary for the record, but otherwise refers to the materials in a manner consistent with USAA's briefs (see Doc. 47 at 7-9), which were not filed under seal. **The parties are advised that, upon review, the Court intends to lift the seal on all summary judgment materials. Any party who opposes lifting the seal should, no later than October 15, 2015, file a written opposition supported by good cause and identifying the documents proposed to remain under seal**.

[8] Plaintiffs state that, from their review of internal USAA documents, USAA only withholds sales tax in the six states where a statute or regulation specifically permits it to do so, and pays sales tax upfront with the settlement in the remaining thirty-nine states and the District of Columbia that have a sales tax but no such statute or regulation. (Doc. 65 at 8-9; Doc. S-70-25.) Plaintiffs find this persuasive evidence that USAA itself believes that that the Policy requires upfront payment of sales tax. (Doc. 65 at 8-9.) USAA opposes consideration of other jurisdictions as irrelevant, but notes that its practices in Florida are consistent with those in states that also have statutes or regulations on sales tax. (Doc. 75 at 11.) Another interesting discussion, but Florida is the focus here.

USAA now argues that the Policy should be read with section 626.9743(9) as an essential component of the Policy that permits USAA's current treatment of sales tax. USAA contends that Florida courts will incorporate statutory provisions like this one into an insurance policy where the policy is otherwise silent so that USAA may pay only incurred sales tax. In USAA's view, this practice makes good policy sense due to potential variations in local sales tax, along with other factors.

The plaintiffs are not convinced that section 626.9743 does what USAA says or that the statute would trump the Policy in any event. Plaintiffs see section 626.9743 as permissive, not mandatory, such that parties may still contract to require sales tax to be paid in full upfront as part of "actual cash value." Plaintiffs contend that such a permissive statute should not be read into an insurance policy, especially a statute intended to regulate insurance practices, not policy language. The plaintiffs believe that if the statute were applied as USAA wishes, they would be subject to an improper precondition to receiving the full coverage they had purchased. Plaintiffs reject the notion that being paid full sales tax without having to buy a replacement would grant them a windfall or cause great upset in the Florida insurance industry, since they say the majority of insurers already pay sales tax upfront.

The Court starts with the parties' last arguments, those based on public policy. A clear statement of purpose by the legislature might illuminate otherwise ambiguous statutory text. But guessing which outcome would be better as a matter of public policy is both beyond the Court's purview, Rodriguez v. United States, 480 U.S. 522, 525-26 (1987); School Bd. of Palm Beach Cnty. v. Survivors Charter Schools, Inc., 3 So. 3d

1220, 1227-28 (Fla. 2009), and, in this case, fruitless. USAA suggests that the legislature made the policy choice to allow insurers to delay payment of sales tax because of the difficulty in determining the amount of sales tax before a replacement vehicle has been purchased. (Doc. 47 at 17.) But none of USAA's submissions indicate what purpose the legislature had in mind in enacting section 626.9743.[9] Moreover, calculating sales tax at the time of settlement is only difficult if one accepts USAA's position that it owes only the amount of sales tax due on the eventual replacement vehicle. The calculation would be simpler if it were based on the actual cash value of the totaled vehicle, like plaintiffs contend. Indeed, USAA made just that calculation in its market valuation report for Bastian's vehicle. (Doc. 52-1 at 6.)

The plaintiffs argue that USAA's position results in a windfall to insurers who receive insurance premiums but improperly withhold payment for sales tax. (Doc. 65 at 35-36.) This, too, assumes the correctness of plaintiffs' position in the first place. To the extent plaintiffs argue that USAA's withholding of sales tax is bad policy because it makes it difficult for insureds to buy replacement vehicles, there has been some suggestion that USAA will pay sales tax once the insured has signed a contract to buy

---

[9] USAA submitted the Florida Senate staff analysis and the Florida Office of Insurance Regulation's 2004 Legislative Summary as support for its interpretation of section 626.9743. (Doc. 47-8; Doc. 49-1.) While the staff analysis indicates that the general purpose of 626.9743 is to set uniform standards that maintain consumer protection and avoid disputes (Doc. 47-8 at 5), there is nothing in either document expressing a specific policy motivating the sales tax provisions. In fact, they barely mention the provisions and, when they do, merely paraphrase the statutory language. (Doc. 47-8 at 2, 10; Doc. 49-1 at 24-25.) Contrary to USAA's suggestion, the agency summary contains no actual "construction" to which the Court might owe "great deference." (Doc. 47 at 16 (citing GTC, Inc. v. Edgar, 967 So. 2d 781, 785 (Fla. 2007)).)

a replacement vehicle, but before the insured has actually had to pay for it. Thus, even if consideration of public policy was appropriate, the Court is not convinced by either party's argument.

Moving past issues of section 626.9743(9)'s practical wisdom, the Court turns to the dispute over what it actually means. From the Court's own research, it appears that no provision of section 626.9743 has ever been the subject of a court opinion. Thus, the parties refer to Florida state court opinions discussing general principles of contract and statutory interpretation.[10]

Citing primarily to Grant v. State Farm Fire & Casualty Co., 638 So. 2d 936 (Fla. 1994) and Foundation Health v. Westside EKG Associates, 944 So. 2d 188 (Fla. 2004), USAA espouses the principle that insurance contracts like the Policy are "surrounded by" statutory limitations and incorporate those provisions, particularly where they provide "essential" substance and detail to the contract. See also Pinzon v. First Liberty Ins. Corp., No. 5:12-cv-636-Oc-10PRL, 2013 WL 5487027, at *6 (M.D. Fla. Sept. 30, 2013) ("It is fundamental that the laws of Florida are a part of every Florida contract." (quotations omitted)); Geico Gen. Ins. Co. v. Schwinn, No. 8:04-cv-

[10] "Where the highest court—in this case, the Florida Supreme Court—has spoken on the topic, we follow its rule. Where that court has not spoken, however, we must predict how the highest court would decide this case." Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1348 (11th Cir. 2011) (citations omitted). "When construing a statute, we strive to effectuate the Legislature's intent," which is first discerned by looking to the statute's plain language and the "common and ordinary meaning" of the words and phrases used therein. Allen v. USAA Ca. Ins. Co., 790 F.3d 1274, 1279 (11th Cir. 2015) (citing Borden v. East-European Ins. Co., 921 So.2d 587, 595 (Fla. 2006), Atwater v. Kortum, 95 So. 3d 85, 90 (Fla. 2012), and Donato v. Am. Tel. & Tel. Co., 767 So. 2d 1146, 1154 (Fla. 2000)).

1485-T-17TBM, 2006 WL 1529092, at *6 (M.D. Fla. May 30, 2006) ("[M]otor vehicle insurance is an area that is surrounded by statutory limitations. The Court therefore presumes that the parties entered into the contract with knowledge of the statutory provisions, and those provisions became part of the contract." (quotations omitted)). USAA reads the Policy to leave open the details of claim adjustment and settlement practice, which section 626.9743 then provides.

Plaintiffs dispute that these general principles apply to the kind of permissive statutory language found in subsections (5) and (9). Plaintiffs cite to a line of recent Florida state court opinions for the proposition that permissive statutory language is not incorporated into a policy unless done so expressly. (Doc. 65 at 23-26 (discussing Geico Gen. Ins. Co. v. Virtual Imaging Servs., 141 So. 3d 147 (Fla. 2013); Kingsway Amigo Ins. Co. v. Ocean Health, Inc., 63 So. 3d 63 (Fla. 4th DCA 2011); and State Farm Fla. Ins. Co. v. Nichols, 21 So. 3d 904 (Fla. 5th DCA 2009).)

The Court agrees with USAA's somewhat uncontroversial principle that some statutes may be incorporated into an insurance policy. But the Court agrees with plaintiffs that subsection (9) is not such a statute. Subsection (9) presents insurers with the option of paying sales tax only after it is incurred. If an insurer wishes to avail itself of this provision, it must expressly elect this option in its policies so as to provide its insured with due notice. As discussed in the preceding section, the language of USAA's Policy requires it to pay the full amount of sales tax that would be due on a comparable vehicle. So USAA has not elected the option provided in subsection (9). But even one who disagreed with this interpretation of the Policy would be hard-

pressed find anything in there that would amount to election of the option to pay sales tax as incurred. At best, the Policy says nothing on the topic, which the Court should construe in favor of the insured. State Farm Mut. Auto. Ins. Co. v. Menendez, 70 So. 3d 566, 570 (Fla. 2011).

In each of plaintiffs' cases, the defendant insurer was looking to utilize an optional statutory provision in an effort to trump the terms of the insurance policy that provided greater coverage. The cases reject this methodology. In Virtual Imaging and Kingsway, a statute permitted insurers to choose between two methods of calculating medical expense reimbursement amounts under Personal Injury Protection coverage, and the courts declined to incorporate the method more favorable to the insurers when the policies had clearly elected the other method. Virtual Imaging, 141 So. 3d at 158-60; Kingsway, 63 So. 3d at 67-68. The statute used the phrase "may limit reimbursement" in accordance with particular reimbursement schedules, which is "language that indicates that this option choice is not mandatory." Kingsway, 63 So. 3d at 67 (first emphasis added). In Virtual Imaging, the Florida Supreme Court agreed with Kingsway and concluded that "[i]n order to exercise the option, the insurer must provide notice in the policy of its election to use the fee schedules." 141 So. 3d at 159.

Similarly, the policy in Nichols included an earlier deadline for payment for subsurface sinkhole repairs than the permissive language of the statute, so the court enforced the deadline in the policy. 21 So. 3d at 905.

As between subsections (5) and (9), the only mandatory language is that in

subsection (5) requiring insurers to pick one of four options for settling first-party motor vehicle total losses and those who pick option (a) pay sales tax. Fla. Stat. § 626.9743(5) ("[T]he insurer shall use one of the following methods . . . . (a) The insurer may elect a cash settlement based upon the actual cost to purchase a comparable motor vehicle, including sales tax, if applicable pursuant to subsection (9)." (emphasis added)). Subsection (9) uses permissive language when it states that "the insurer may defer payment of the sales tax unless and until the obligation has been incurred." Fla. Stat. § 676.9743(9) (emphasis added).

The Court declines to read section 676.9743(9) into the Policy.[11] Instead, the Court reads subsection (9) to allow, but not require, insurers to choose in their policies to pay sales tax as incurred. The Court sees nowhere in the Policy where USAA could be said to have chosen this option. Instead, the Policy provides for payment of the full amount of sales tax on a "comparable" vehicle. Even if subsection (9) were mandatory, the parties would still be free to contract for this coverage. See Green v. Life & Health of Am., 704 So. 2d 1389, 1390-91 (Fla. 1998); also Fla. Stat. § 627.418(1); Allen v. USAA Ca. Ins. Co., 790 F.3d 1274, 1283 (11th Cir. 2015). Thus, section 626.9743 does not decide the outcome in this case, and the plaintiffs are owed the full amount of sales tax that would be due on the purchase of a vehicle comparable to their covered vehicle.

## IV. CONCLUSION

This appears to be a case of first impression under Florida insurance law. The

[11] Though not determinative, it is worth noting that section 626.9743 is in the chapter of the Insurance Code on "Insurance Field Representatives and Operation," not "Insurance Rates and Contracts."

Court has now provided its answer.[12] But the case does not end with this conclusion. Thus far, the parties and the Court have agreed to put aside class certification. With the primary legal question now answered, the parties should confer and advise the Court of the next step.[13]

Accordingly, it is hereby

**ORDERED**:

1. Defendants' Dispositive Motion for Summary Judgment (Doc. 47) is **DENIED**.

2. Plaintiffs' Dispositive Counter Motion for Summary Judgment (Docs. 65, S-68) is **TAKEN UNDER ADVISEMENT**.

3. The parties shall meet and confer and, on or before **November 2, 2015**, file a joint report as to how the Court should proceed.

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of September, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

bjb
Copies to:

Counsel of record

[12] Unlike the Eleventh Circuit, this Court has no authority to certify the issue to the Florida Supreme Court.

[13] The parties should take this opportunity to discuss settlement of the entire case. If they wish the Court to appoint a mediator now, all they have to do is ask.