**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| CHANTAL BASTIAN, *et al.* on behalf of themselves and all others similarly situated, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Case No.: 3:13-cv-001454-TJC-MCR |
| | : | |
| vs. | : | |
| | : | |
| UNITED SERVICES AUTOMOBILE ASSOCIATION, *et al.,* | : | |
| | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE**
**ELECTRONIC DATA DISCOVERY AND MEMORANDUM OF LEGAL**
**AUTHORITY**

Plaintiffs file this motion to compel Defendants to produce claims and payment data.

**CONCISE STATEMENT OF RELIEF REQUESTED**

Plaintiffs request that the Court order Defendants to produce all actual cash value data, sales tax data, sales tax payment data, physical damage payments data, and other claims data for the ▮▮▮▮ putative class claims that make up this class action lawsuit. Plaintiffs also request that Defendants provide data field lists and definitions for their data systems for first party total loss claims.

Because the data is needed for Plaintiffs to prepare for the August 31, 2016 mediation and deadlines for discovery (October 14, 2016) and expert disclosures (October 28, 2016) are approaching, Plaintiffs request that the Court order an in-person conference or hearing as soon as possible to address these issues and the timing of supplemental productions. Plaintiffs

1

request that the Court order a Defendants' representative to be present at the conference or hearing.

## BASIS FOR REQUESTED RELIEF

Defendants have refused to produce claims data, including actual cash value data for over 17,900 claims, payee data for payments relating to the ███ claims that make up the putative class, and sales tax calculations data for over ████ claims.  Plaintiffs' counsel identified data systems maintained by Defendants, including the ███████████ data system, that appear to have all of this information in electronic format.  Defendants have refused to produce electronic data relating to actual cash value, sales tax, and payments from this ███████ and other databases.

Defendants also have made misstatements and misleading statements that appear to be an attempt to frustrate Plaintiffs' attempts to prosecute the case.

Plaintiffs have made repeated efforts to resolve the many problems with Defendants' discovery responses without Court intervention.  See Ex. A, letters from Plaintiffs' counsel Hall to Defense counsel Ackerman of June 21, 2016 (missing sales tax data, sales tax payment data, actual cash value data, errors in data, and other problems with the data); June 22 (missing data, missing data fields information,[1] missing data source information); June 22 (second letter of day) (noting that Plaintiffs requested a Fed. R. Civ. P. 30(b)(6) deposition on May 24 and attaching notice); June 23 (failure to produce metadata); June 27 (improper and erroneous redactions); June 30 (apparently missing data in reinspection program files and request for

---

[1] Data fields are places where Defendants can store data. Data fields commonly refer to a column in a database or a field in a data entry form or web form. The field may contain data to be entered as well as data to be displayed.

sample files); July 18 (missing data, data sources that have not been identified or searched for information, improper 30(b)(6) witness, need for depositions); July 20 (requesting data source for reinspection data produced to support Defendants' claims); July 21 (erroneous redactions, missing data not produced from available electronic data sources, errors in Nature of Pay fields relating to payees). Defendants' responses never included agreement to produce the most important data or search important data sources. Ex. B, letters, Ackerman to Hall of June 27, July 8, July 20, email July 24.

Plaintiffs' counsel believe that sanctions are appropriate. But the most important solution for Plaintiffs now is to get the documents, data, and information produced so that Plaintiffs can prosecute their case.[2]

## MEMORANDUM OF LEGAL AUTHORITY AND SUPPORT

## BACKGROUND

This case seeks recovery of the sales tax amounts Defendants owed their insureds on first party private passenger auto ("PPA") physical damage total loss vehicle claims. During the relevant period beginning October 17, 2008 and continuing through the present, Defendants have preconditioned the payment of sales tax on first party total loss claims on the insured first purchasing a replacement vehicle and paying sales tax. If, and only if, the insured provides proof of paying sales tax on the replacement vehicle, Defendants will then pay the lesser of (a) the sales tax that would be due on the insured total loss vehicle vs. (b) the sales tax paid on the

---

[2] Plaintiffs' July 18 letter informed Defendants that they would seek Court intervention and offered Defendants a last chance to produce data and information. Ex. A, July 18 letter, Hall to Ackerman. Defendants' response was insufficient, and failed even to include an agreement to produce missing data. Ex. B, July 20 letter, Ackerman to Hall.

replacement vehicle. This Court held that Defendants' practices in this respect violate Florida law and their contracts with insureds. Order on Motion for Summary Judgment (Doc. 96).[3] The parties presently are taking discovery relating to damages and class certification issues. The discovery period ends October 14, 2016 (Doc. 106).

### Damages Are Easy To Calculate

The sales tax that Defendants should have paid to their insureds is the major component of damages. This damage amount is determined simply by multiplying the sales tax percentage by the actual cash value of the total loss insured vehicle. For example, a total loss vehicle with an actual cash value of $10,000 would have state sales tax due of $600 based on the state 6% sales tax. The insured should have been paid this $600 amount.[4] The actual cash value thus is crucial to this case because it determines the amount of sales tax that should have been paid to the insured. The actual cash value and sales tax due are part of every first party total loss vehicle valuation, and is communicated to the insureds. Ex. C, Market Valuation Report; Ex. D, form letters to insureds; Ex. E, Claim and Payment Information form letters to insureds.

Defendants paid the sales tax due (or part of the sales tax due) on some of the ▉▉▉ claims. Thus, the amount of sales tax actually paid to the insured (if the insured purchased a replacement vehicle and provided proof of sales tax payment) is relevant so that it may be subtracted from the sales tax that should have been paid.

---

[3] On December 10, 2015, this Court granted Defendants' motion to certify the Summary Judgment Order for interlocutory appeal. (Doc. 96). The 11th Circuit Court of Appeals denied Defendants' petition for interlocutory appeal on February 29, 2016.

[4] This example assumes there is no local sales tax, which may apply for up to $5,000 of the actual cash value.

In a surprising revelation, Defendants claim that they do not have data showing the actual cash value for over ███████ of the ███████ claims making up the putative class. Defendants also claim that they do not have the data showing the insured vehicle sales tax valuation for over ███████ of the claims.  Defendants also claim that they do not have data showing sales tax paid to insureds for most of the ███████ claims.

This missing data is convenient for Defendants because they will argue that the case should not be certified if there is no data from which to make the damage calculations.

### Defendants Should Have the Actual Cash Value and Sales Tax Data

The exact nature of Plaintiffs' damage claims and the relevant information relating to those claims have been known since the lawsuit was filed on October 17, 2013.  The lawsuit squarely places at issue the actual cash value, the amount of sales tax due on the insured vehicle, and the amount of sales tax actually paid to the insured.  Defendants claim to not have this data for both the period before and after the lawsuit.

Defendants knew and analyzed these issues well before the lawsuit.  ███████████

████████████████████████████████████████████████

█████████████████████████████████████████  When the lawsuit was filed, Defendants knew that the retention of sales tax data was necessary due to the obvious relevance to the lawsuit damage allegations.  It is incredible to Plaintiffs' counsel that Defendants do not have this data.

**Plaintiffs Request Production of All Claims Data for the Relevant Claims**

Plaintiffs served discovery seeking all claim and payment information and data for the relevant claims on April 14, 2016.  Responses were due on May 17, 2016.  Defendants moved to extend the time to respond. (Doc. 104)  At the hearing on the motion for extension, the Court ordered Defendants to produce substantive responses and data on June 15, 2016. (Doc. 105)

Defendants produced incomplete data on June 15, 2016.  Since that time, Plaintiffs diligently have sought proper discovery responses from Defendants. Ex. A, letters from Plaintiffs' counsel; Ex. B, Defense letters in response.  Plaintiffs' July 18 letter informed Defendants that Plaintiffs would seek Court intervention and offered Defendants a last chance to produce data and information.  Ex. A, July 18 letter.  Defendants' response was insufficient, and failed even to include an agreement to produce data from the available data sources. Ex. B, July 20 letter.

**I.     Defendants Withhold Actual Cash Value Data.**

Soon after reviewing Defendants' June 15 data production, Plaintiffs' counsel sent a letter to Defendants' counsel objecting to Defendants' failure to produce the actual cash value

for over ▮▮▮▮ claims. See Ex. A, June 21 letter from Hall to Ackerman.[6]   Defendants'

counsel's response was simply that the data did not exist because the data fields were not

populated.  Ex. B, June 27 letter from Ackerman to Hall, at 3.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

Defendants designated Glen Dalke to testify in the Rule 30(b)(6) deposition relating to

claims data maintained by Defendants and the data produced in response to discovery requests.

---

[6] Defendants were required to produce all actual cash value data, sales tax calculation data, sales tax payment data, claims payment data, and other claims data for the relevant claims.  Ex. AB, Pls.' Interrogatories, No. 1, Document Requests, No. 1.
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ex. I, Rule 30(b)(6) Notice; Ex. J, Defendants' Objections to 30(b)(6) Notice.[8]  Dalke was the USAA employee who searched for and downloaded the claims data produced in response to Plaintiffs' discovery requests.  Dalke had not searched the ████████ for data responsive to Plaintiffs' requests. ████████████████████████████████████████████████████████



        This Court should order Defendants to produce the ████████ and all other data responsive to the discovery requests.

## II.    Defendants withhold insured vehicle sales tax calculations.

        Defendants also withhold the insured vehicle sales tax calculations.  This calculation was made for every first party total loss claim and is simply the multiplication of the actual cash value by the applicable sales tax percentages. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[8] A review of the objections to the Notice shows that Defendants sought to provide as little information about data as possible. Plaintiffs responded by stating that they disagreed with objections and would proceed with the deposition before seeking Court intervention if necessary.

[REDACTED]

## III.     Defendants Withhold Information Showing Sales Tax Paid to Insureds.

Defendants claim that they do not have consistent data showing the total sales tax paid to insureds.  The sales tax actually paid would be subtracted (as a set off) from the sales tax that should have been paid.  Defendants claim that this information is not available in electronic format.  Plaintiffs simply do not believe Defendants - or at least Plaintiffs believe that other electronic data (not yet produced) should enable easy determination of the sales tax paid.  As of this date, Defendants have refused to produce payee data, payment request data, payment approval data, payment invoice data, and payment limits data that Plaintiffs know exist. [REDACTED]

[REDACTED]

---

[9] The sales tax on the insured vehicle is relatively easy to calculate.  The only wrinkle is that each county may impose a local discretionary sales tax of up to 1.5% of the first $5,000 of the claim.  Plaintiffs can make the calculations by formula – but Defendants' systems already have.

[REDACTED]

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

      The Court should Order Defendants to produce this payment data.

**IV.   Defendants withhold other payment data and make improper redactions.**

      Defendants have refused to produce payment and payee fields showing who was paid various amounts relating to the total loss claim.  If Defendants are allowed to stand by their claim that they do not have data showing the sales tax paid, a formula can determine the amount of sales tax paid by "backing out" the number from the payment data.  The payment and payee data are needed to perform these calculations.[11]

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

---

[11] Payments to the insured or lienholders may include actual cash value, title, license plate, branch processing, and sales tax minus deductible.  With the actual cash value and payment data, Plaintiffs believe they can determine whether the insured received the proper amount of sales tax.  The title, license plate, and branch processing fees are fixed amounts.  Any shortfall in the amounts owed should be attributable to sales tax.

████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████

███████████████████████████████████████████████████

████████████  Defendants should be ordered to produce such data.

**V.    Defendants Refuse To Disclose Information About The ███████████████,
Reinspection Data, ████████████████████, And Other Data.**

**A.  Defendants Have Refused To Produce or Agree to Produce ██████████.**

In response to Plaintiffs' counsel's July 18 letter demanding production of ██████████,

Defendants have only stated that they will look into the matter.  Ex. A July 18 letter; Ex. B,

Ackerman Response.  This position is noteworthy given that the data should have been

produced over 40 days ago on June 15.

───────────────────────────

████████████████████████████████████████████████████
██████████████████

**B.  Defendants Have Refused To Disclose Where Reinspection Data Came From.**

Defendants refuse to identify the source of reinspection data produced by Defendants purporting to question the reliability of their original vehicle valuations. Ex. Y (sample of reinspection claims data produced by Defendants).[13]  This reinspection data is in excel format and includes substantial claim information.   Defendants produced this reinspection data separately from the claims data and for the purpose of supporting its defenses.

Given Defendants' claims of missing data, Plaintiffs' counsel wanted to know the data source for the reinspection data.  Dalke testified that he did not know where the reinspection data came from. Ex. K, Dalke at 77-78. He also believed the reinspection data came a source separate from the claims data produced in the case. *Id.*

Plaintiffs have requested that Defendants identify the data source for this reinspection data because it may lead to other data that Defendants claim not to have. Ex. A, email of July 20, 2016, Hall to Ackerman.  Defendants have refused to respond to this request. Defendants should be ordered to identify the source of this data and produce other claims data available from that source.

**C. Defendants Appear Not to Have Produced Data From The ▮▮▮▮▮▮
      ▮▮▮▮▮▮ And Have Refused to Agree To The Production of Such Data.**



---

[13] It is noteworthy that Defendants refuse to identify the source of this claims data.

███████████████████████████████████████████████████ Defendants

should be ordered to produce all relevant data from the ████████████

**D.  Defendants Made No Effort To Determine What Responsive Data Is Accessible From the ██████████.**

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

**E.  Defendants Appear Not To Have Searched or Produced ███████████**

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

## VI.     Defendants Have Made Deceptive Statements And Misstatements.

Defendants have been deceptive and made misstatements relating to discovery.

Defendants were deceptive when responding to Plaintiffs' counsel's objection that

actual cash value data was missing for over ██████ claims ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████ True, the information was not populated in the one data

source from which Defendants pulled data.   But the information is populated in the ██████

██████ and other systems.  Defendants withheld that information and Plaintiffs had to discover

this for themselves.

Defendants' discovery response stated: "Defendants will provide the available data

concerning actual cash value and total loss settlement amount."  This statement is not true.

Defendants provided data that had actual cash value and total loss settlement amounts with

data missing for over ██████ of the ██████ claims ████████████████████  The responsive

data is found in the ████████████ and Defendants still refuse to produce it.  Defendants <u>did not</u>

<u>produce</u> the available data concerning actual cash value and total loss settlement.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████ This

statement is untrue. ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████

        Defendants made misstatements in discovery responses relating to the available lien

information.[14] ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

This statement is false. The ██████████<mark>em</mark> maintains data fields for lien payoff amounts and

payments. Ex. O, █████ lien data.

        Defendants made misstatements relating to owner retained vs. insurer retained

salvage.[15] █████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[14] The lien data is only relevant if Defendants cannot produce the sales tax payment information and the Court allows them to assert a set-off without proving the amount.  The sales tax payment information can be determined by formula by comparing what the insured should have been paid vs. what the insured was paid.  But in cases where a lien existed, the payment to the lienholder should be attributed to the insured when determining if the insured was underpaid for sales tax.

[15] The distinction is only relevant if Defendants' data truly does not identify the sales tax that it paid to insureds.  If the sales tax cannot be identified, then the sales tax can be determined by formula.  The formula is slightly different between owner retained and insurer retained salvage because the owner retained salvage was not paid title and license fees.

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

Defendants made misstatements relating to the availability of Car Replacement

Assistance Coverage data. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

## VII.    Defendants Have Refused To Identify Data Fields Maintained For First Party PPA Physical Damage Total Loss Claims.

Plaintiffs' discovery requests sought the data fields, and field definitions for the first

party PPA physical damage total loss claims.  Ex. AB, Defs.' Resp. to Discovery, Interr. No.

13 (seeking data fields and definitions for responsive claims data).  Defendants have refused

to identify the fields of data that it maintains, even though such information is necessary when

searching for missing data. Ex. B, July 8 letter, Ackerman to Hall, at 2.

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[16]  Defendants produced data field descriptions for the fields that were produced. But Defendants will not identify what fields it maintains for the first party total loss claims.  Other fields exist, and Plaintiffs have been thwarted in their discovery of same.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████

After the deposition, Defendants agreed to provide Plaintiffs' counsel with data field information for the auto data system so long as Plaintiffs' counsel review this data on a computer screen and agrees not to make copies of same.  This access has not been granted yet. Moreover, Defendants have not agreed to produce the data fields for the ███████████.  All data field lists and field definitions should be produced.

## VIII. Defendants Have Withheld and Refused to Provide Important Information Noticed For Deposition Pursuant to Fed. R. Civ. P. 30(b)(6).

Plaintiffs' counsel informed Defendants' counsel on May 24 (before the June 15 Court-required production) that Plaintiffs' first priority in discovery was to get a 30(b)(6) witness to testify about the claim and payment information systems and the data produced in response to discovery. Ex. A, May 24 email, Hall to Ackerman.  The 30(b)(6) deposition was Plaintiffs' effort to get answers to many of the above issues.  Plaintiffs' efforts were thwarted due to the witness's lack of preparation.

The 30(b)(6) witness could not answer even the most basic questions relating to the data produced by Defendants.  The data produced was in excel spreadsheets.  Each column of the spreadsheet includes a "field" of data. Ex. V, (the data fields and the first 200 lines of data for Base Data and Base Allocation Data).  One purpose of the deposition was to determine what the fields include, and what the terms used repeatedly in the field data mean.

---

[17] Defendants have agreed to supplement their production with some lease and lien data, but it has not yet been provided.



[redacted]

*See* Ex. A, letter of July 18, Hall to Ackerman.

[18] He believed "COMP" means comprehensive, and "COLL" means collision. But he did not know what type of coverage payments are included in those fields.

When asked who would have the above information, Dalke repeatedly responded that he would look to Defendants' "Claims Staff" for the information.  Defendants have refused to agree to produce a witness from "Claims Staff" until August 17.  Defendants should be ordered to produce a witness who is prepared to explain the data produced, the data sources maintained by Defendants relating to the first party total loss claims.

### CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant this Motion to Compel.

Dated this 2nd day of August, 2016.

/s/ Christopher B. Hall_____
Christopher B. Hall
Georgia Bar No. 318380
Appearing Pro Hac Vice
Hall & Lampros, LLP
1230 Peachtree Street, NE, 37th Floor
Atlanta, GA 30309
Phone: (404) 876-8100
Facsimile: (404) 876-3477
chall@hallandlampros.com
Trial Counsel

Tracy L. Markham
Florida Bar No. 0040126
Avolio & Hanlon, P.C.
2800 N 5th Street
Suite 302
St. Augustine, Florida 32084
Phone: (904) 794 7005
Facsimile: (904) 794 7007
tlmarkhamlaw@gmail.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on August 2, 2016, I served this Motion to Compel on the following counsel through the ECF system.

Kristen Vanderlinde                     Wystan M. Ackerman
Boyd & Jenerette                        Robinson & Cole LLP
201 North Hogan Street, Suite 400       280 Trumbull Street
Jacksonville, FL 32202                  Hartford, CT 06103


                                        /s/ Christopher B. Hall_____
                                        Christopher B. Hall