UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| CHANTAL BASTIAN, on behalf of herself and all others similarly situated, | : : : |
| Plaintiff, | : CASE NO.: 3:13-cv-1454-J-32MCR |
| vs. | : : |
| UNITED SERVICES AUTOMOBILE ASSOCIATION, et al., | : : : |
| Defendants. | : |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

Plaintiffs' motion to compel grossly distorts Defendants' extensive efforts to cooperate with the very extensive and burdensome discovery requests made by Plaintiffs' counsel in this complex putative class action case. Plaintiffs' motion to compel also fails to accurately inform the Court that, *prior* to Plaintiffs filing their motion to compel, Defendants had *agreed* to provide the vast majority of the information being sought, to the extent it had not already been provided and could feasibly be provided. Plaintiffs' premature and scattershot motion failed to comply with Local Rule 3.01(g), which requires that the moving party confer with opposing counsel, and then raise with the court *only* issues that are actually in dispute. Plaintiffs' motion fails to focus on specific areas that are actually in dispute, and instead describes various areas where Defendants previously agreed to, and now in fact have produced additional data, and other areas where Defendants do not have the capability of extracting data *en masse* in the manner that Plaintiffs suggest.

Defendants have devoted extensive time and costs to responding to Plaintiffs' requests. Glen Dalke, Defendants' Business Operations Analyst who is responsible for

performing the types of data searches requested by Plaintiffs, has devoted hundreds of hours to searching for and extracting the data requested by Plaintiffs in this case. (Dalke Decl. ¶ 4 (Ex. A).) Defendants have also freely cooperated with Plaintiffs' counsel in discovery by informally providing various types of factual information by telephone or through letters from counsel, without forcing Plaintiffs to go through the formal process of interrogatories and depositions. (*See, e.g.,* Plaintiffs' Motion to Compel Ex. B, letters from Defendants' counsel answering various questions informally.) Defendants have done exactly what the rules contemplate with respect to cooperation in discovery.

Plaintiffs filed their motion to compel notwithstanding that Defendants agreed to provide additional data and were working on doing so when Plaintiffs' motion was filed. That data has now been provided to the extent it is reasonably feasible to do so. Plaintiffs' assertions that "Defendants have refused to produce claims data" (Motion to Compel, at 2) is simply not true—Defendants have produced multiple versions of spreadsheets with more than 50 columns and more than 280,000 rows, listing numerous fields of data on the more than ▮▮▮ claims at issue. The data included for each payment includes, among other things, the amount of payment, the date of payment and (where available) a description of the payment. The description of payment contained in the database is a free text field titled "Nature of Payment," which includes information manually entered by Defendants' member service representatives. Defendants performed a thorough search for actual cash value, sales tax and other data fields available from the very same database that is used for all similar requests made for business purposes or other litigation.

2

Defendants will endeavor to address below each of the issues raised by Plaintiffs, many of which mischaracterize what Defendants have produced or agreed to produce, and many of which are based on incorrect assumptions and a fundamental misunderstanding of Defendants' data retrieval capabilities.

**I.     The ▮▮▮▮▮▮▮▮▮▮ System**

Plaintiffs focus heavily on incorrect assumptions they are making regarding Defendants' ability to retrieve historical data on more than ▮▮ automobile insurance claims going back to October 2008 from Defendants ▮▮▮▮▮▮▮▮▮▮ system, which is part of USAA's overall electronic claims system. ▮▮▮▮▮▮▮▮▮▮



███

███

███ While much of the information in the ███ system is also available from the ███ database, Defendants do not have the capability of extracting data on more than ███ claims from the ███ system, without creating a new, custom computer program (which Defendants have no obligation to do for purposes of responding to discovery in litigation). (Salisbury Decl. ¶ 2.) What Plaintiffs are seeking would require Defendants to attempt to write a new computer program, for purposes of this lawsuit, to attempt to extract large-scale data from the ███ system in a manner that Defendants do not do in the ordinary course of business. Courts have found that it is inappropriate to require a party to create a new document in response to a document request, and there is nothing in the rules allowing Plaintiff to require Defendants to attempt to create a computer program in an attempt to create a document. *See, e.g.*, *Alexander v. FBI*, 194 F.R.D. 305 (D.D.C. 2000) (explaining that "Rule 34 only requires a party to produce documents that are already in existence," and "[a] party is not required 'to prepare, or cause

4

to be prepared,' new documents solely for their production"); *Butler v. Portland General Electric Co.*, 1990 U.S. Dist. LEXIS 1630, *4 (D. Or. Feb. 9, 1990) (denying motion to compel because "the requested information has not been compiled into the form of a document or a computer program," and "the law does not require a party to prepare or create a document in response to a discovery request").

Defendants identified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, as maintaining a database from which much of the data sought by Plaintiffs potentially could be extracted *en masse*. After conferring with Plaintiffs' counsel regarding the scope of the data request, Defendants' counsel asked ▓▓ to perform such a data search. ▓▓ rovided the data that it had available, and that data has been produced to Plaintiffs. This appears to resolve most, if not all, of the issues raised by Plaintiffs in their motion to compel, and was something that Defendants had agreed to before the motion to compel was filed.(Plaintiffs' Motion to Compel Ex. B-4.)

## II.    Actual Cash Value Data

Plaintiffs argue that actual cash value data is "missing" for more than ▓▓ laims. When the spreadsheet provided by Defendants is sorted by date of loss, the actual cash value data is not populated on claims prior to April of 2011. It thus appears likely that this data field was not populated in the ▓▓ database prior to that date. (Dalke Depo. at 49 (Plaintiffs' Motion to Compel Ex. K).) ▓▓ however, has provided vehicle valuation data on all of the putative class members' claims to the extent ▓▓ has that data available, and the ▓▓ data includes claims going back to 2008. Defendants conducted a thorough search of the ▓▓

database for actual cash value data. (Dalke Decl. ¶ 5.) As discussed above, Defendants do not have the capability of extracting historical data *en masse* from the ▮ system.

### III.   Estimated Sales Tax and Payments of Sales Tax

Plaintiffs also argue that data is "missing" regarding estimated sales tax (i.e., the maximum amount of sales tax that would be paid if a replacement vehicle with the estimated actual cash value were purchased), and regarding payments of sales tax. Defendants conducted a thorough search of the ▮ database for any sales tax data and provided what was available. (Dalke Decl. ¶ 5; Dalke Depo. at 40, 117-18 (Ex. C).) Defendants have also asked ▮ to produce any sales tax data that it has available on the putative class members' claims, and provided the results of ▮ data search to Plaintiffs.

In addition, Defendants have produced a data field that shows the payee, with the identity of the payee redacted if it is the member, consistent with the fact that Defendants are not disclosing the confidential personal identifying information for the more than ▮ members that are potential class members.[1] Plaintiffs can thus determine if there was a supplemental payment that potentially could be a sales tax payment. In some instances the fact that the payment was for sales tax is noted in the "nature of pay" field. This "nature of pay" field is what was used by Alan Bush of USAA to estimate potential sales tax payments

---

[1] Defendants' counsel utilized a computer program to electronically search for and redact insured names from the text of the "Nature of Payment" column and payee column. The only alternative to using the computer program to redact the members' (policyholders') names was to manually redact each of the 280,000-plus rows, a process that was estimated to take several hundred hours and which would have significantly delayed production of responsive information. There were minor glitches in this process, which Defendants' counsel believe have now been corrected.

in 2007 because that was the best available source for that purpose that he was able to identify. (Bush Document (Ex. D hereto).)

IV.     **Payee Information**

Plaintiffs' motion also asserts, incorrectly, that Defendants have "refused to produce payment and payee fields showing who was paid various amounts relating to the total loss claim." (Plaintiffs' Motion to Compel, at 10.) Defendants agreed to provide the payee data prior to the motion to compel being filed. (Plaintiffs' Motion to Compel Ex. B, Ackerman to Hall 7/8/16.) Defendants have now produced that information.

V.      **Reinspection Data, "Production Database,"** ▮ **Data and** ▮▮▮

Although Plaintiffs have not served any formal discovery asking about the source of the reinspection data, in an effort to be cooperative, the reinspection data produced is a combination of information from a ▮ database and from Defendants' own records. Defendants have offered to produce a reasonably-sized, random sample of claim files on claims on which a reinspection was performed, and have offered to provide Rule 30(b)(6) testimony regarding the reinspection process and reinspection data at a later date.

Plaintiffs also argue that Defendants should be required to produce data from a live, production database. (Plaintiffs' Motion to Compel at 12.) Live production databases, such as ▮ are used by Defendants in operating their business on a daily basis. These databases cannot be shutdown to perform searches for historical claim information, as that would disrupt Defendants' business operations. Historical data on automobile insurance claims is extracted from the ▮ database, which is Defendants' database of record for historical claim data. (Salisbury Decl. ¶¶ 2-3.)

7

Plaintiffs also argue that Defendants should be required to produce data that they can access through the ▮▮▮▮. The ▮▮▮▮ allows Defendants to pull information on an individual claim. It does not provide a mechanism for Defendants to extract historical data *en masse* on more than ▮▮ claims. (Price Decl. ¶ 2 (Ex. E).) As explained above, Defendants made a request to ▮▮ for the data that Plaintiffs have requested, ▮ provided this data, and it has been produced to Plaintiffs.

Plaintiffs also argue that Defendants should be required to search for and produce "data" from ▮▮▮▮. (Plaintiffs' Motion to Compel, at 13.) ▮▮▮▮ is not a database. It refers to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Price Decl. ¶ 3.)

## VI. Data Fields and Field Definitions

Prior to Plaintiffs filing their motion to compel, Defendants agreed with Plaintiffs' counsel to prepare and provide them with a list of data fields in the ▮▮ database regarding automobile physical damage total loss claims, and then to provide Plaintiffs' counsel with controlled and monitored access, through a computer connection, to the data dictionary that contains definitions of data fields.[2] (Plaintiffs' Motion to Compel Ex. B, Ackerman e-mail to Hall 7/21/16.) This process will be arranged.

---

[2] Defendants consider the ▮▮ data dictionary to be a highly-sensitive, highly-confidential document, the release of which implicates significant information security concerns. The data dictionary also contains vast amounts of information that have nothing to do with automobile insurance claims. (Dalke Decl. ¶ 7.) In this era of nearly daily data breaches, Defendants are not willing to release and provide uncontrolled access to the massive guidebook to their ▮▮ database.

**VII.    Rule 30(b)(6) Deposition**

Plaintiffs also argue that Defendants have failed to provide adequate Rule 30(b)(6) deposition testimony regarding their data. (Plaintiffs' Motion to Compel at 17-18.) When the Rule 30(b)(6) deposition of Mr. Dalke was scheduled, Plaintiffs' counsel was informed that Mr. Dalke would testify regarding the data extraction that he performed, and that a different witness would be necessary from the claim department to testify regarding how the claim department enters data and utilizes the data fields. Defendants explained that this second deposition would need to be scheduled separately for a different date. (Plaintiffs' Motion to Compel Ex. B, Ackerman letter to Hall 6/27/16, at 5.) Defendants also followed up on this letter by serving detailed objections and responses to the Rule 30(b)(6) notice explaining precisely the scope of testimony that Mr. Dalke would be able to provide. (Plaintiffs' Motion to Compel Ex. J, at 7-8.) Mr. Dalke provided the scope of testimony that Defendants agreed to provide at his deposition. His responsibility is to extract data, as he explained. He was not a witness designated to testify on behalf of Defendants with regard to claim department procedures, such as how data is input into data systems by claims personnel and how data fields are utilized by the claim department.

Following Mr. Dalke's deposition, consistent with the prior correspondence, and prior to this motion to compel being filed, Defendants agreed to produce Michael Troy Price as an additional witness in response to the Rule 30(b)(6) notice. (Plaintiffs' Motion to Compel Ex. B, at 3.) Mr. Price's deposition is taking place tomorrow, August 17, 2016. Mr. Price is from the "Claim Staff" organization that Mr. Dalke explained would be able to answer questions asked by Plaintiffs' counsel that he was not able to answer.

9

### VIII. Defendants Have Not Made Deceptive Statements

Defendants take offense to Plaintiffs' assertions in their motion to compel that Defendants have made "deceptive statements and misstatements." (Plaintiffs' Motion to Compel at 14-16.) Defendants conducted a thorough search for data from the ▇ database, which is the very same database that is used when Defendants' own management make similar data requests. (Dalke Decl. ¶¶ 3, 5.) Defendants responded to the discovery based on the ▇ database, which is Defendants' database of record for purposes of all similar requests. Plaintiffs' assertions of purported "misstatements" focus entirely on the ▇ system. Defendants did nothing to "hide" the existence of the ▇ system from Plaintiffs. Rather, Defendants produced numerous documents pertaining to the ▇ system, and a number of those documents are attached by Plaintiffs' counsel as exhibits to their motion to compel. As explained above, the ▇ system is *not* a source from which Defendants can feasibly perform a large-scale extraction of data on more than ▇ claims. (Salisbury Decl. ¶¶ 2-3.)

### CONCLUSION

Defendants have cooperated extensively with Plaintiffs in discovery and provided or agreed to provide all relevant and reasonably accessible data. There is ample time to complete any remaining work prior to the October 14, 2016 discovery deadline, which is approximately two months away. Defendants will continue to cooperate with respect to Plaintiffs' data requests. Plaintiffs' motion to compel should be denied.

|  |  |
|---|---|
|  | UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA CASUALTY INSURANCE COMPANY, GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, and USAA GENERAL INDEMNITY COMPANY, |
| Stephen E. Goldman (pro hac vice) | |
| Wystan M. Ackerman | By s/Kristen M. Van der Linde |
| (pro hac vice) | Kristen M. Van der Linde |
| Benjamin C. Jensen | Fla. Bar No. 0964573 |
| (pro hac vice) | Boyd & Jenerette |
| Robinson & Cole LLP | 201 North Hogan Street, Suite 400 |
| 280 Trumbull Street | Jacksonville, FL 32202 |
| Hartford, CT 06103 | Tel. 904-493-3766 |
| Tel. 860-275-8200 | Fax 904-493-3739 |
| Fax 860-275-8299 | E-mail: kvanderlinde@boyd-jenerette.com |
| E-mail: sgoldman@rc.com | |
| E-mail: wackerman@rc.com | |
| E-mail: bjensen@rc.com | |

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 16, 2016, a copy of the foregoing was filed electronically. A copy of this filing will be sent by e-mail to all parties who have appeared in this action by operation of the Court's electronic filing system, and by first-class mail, postage prepaid, to any parties that do not have access to the Court's electronic filing system.

                                        s/Kristen M. Van der Linde
                                        Kristen M. Van der Linde
                                        Fla. Bar No. 0964573